[No. 29051.   Department Two.   December 14, 1943.]

GEORGE RUTGER *et al., Appellants,* v. ROBERT WALKEN, *Respondent.*[1]

[1]Reported in 143 P. (2d) 866.

*George F. Hannan* and *C. C. Chambers,* for appellants.

*Ballinger, Hutson & Boldt* and *W. J. Truscott,* for respondent.

MILLARD, J.—This action was brought by plaintiffs, a marital community, to recover for personal injuries to plaintiff wife and property damage claimed to have been sustained as a result of the negligent collision of the automobile of defendant with the automobile of plaintiffs. By answer, defendant denied all charges of negligence and, as an affirmative defense, pleaded contributory negligence. During the progress of the trial of the cause to the court, sitting with a jury, on motion of counsel for defendant all of the testimony of plaintiff wife was stricken. At the close of plaintiffs' case, defendant's challenge to the sufficiency of the evidence was sustained and a judgment was entered dismissing the action. Plaintiffs appealed.

It is appellants' position that the trial court erred in striking all of the testimony of appellant wife and committed further error in refusing, after striking that testimony, to reopen the cause to permit appellant wife to testify further.

The accident out of which this action arose occurred about noon October 16, 1941, when the pavement was wet from a morning rain, within or immediately without, the intersection of Nickerson and Florentia streets in Seattle. A Packard sedan operated by appellant Mrs. Rutger was proceeding in a southeasterly direction on Nickerson street. A Ford sedan operated by respondent was proceeding in a northwesterly direction on Nickerson street. The course of Nickerson street, which is nonarterial, is northwesterly and southeasterly and is intersected by Florentia street, the course of which is east and west. Nickerson and Florentia streets are also intersected by Third avenue north, the course of which is north and south.

The automobile operated by Mrs. Rutger, when she was endeavoring to make a left turn onto Florentia street, collided with the automobile of respondent, which was proceeding northwesterly on Nickerson street. Appellants'

automobile was following another automobile going in the same direction and she turned to the left while the automobile in front continued on its course on Nickerson street. Those two automobiles were traveling close to the center of the street because a truck was parked there. Mrs. Rutger did not see respondent's automobile until she turned from behind the car in front of her. Mrs. Rutger, who had been in court during the first trial of this action and was not an inexperienced witness and had operated an automobile for a number of years, testified that she is familiar with this highway, that she saw the respondent's automobile one hundred to two hundred feet to the south before she got onto the center strip; that she turned and looked up Third avenue (by which time she was across the center and on the left-hand side of Nickerson street when she was proceeding not to exceed eighteen miles an hour) and then saw respondent's automobile which she endeavored to avoid as it proceeded toward her and that respondent did not see her as he was looking across the street.

On cross-examination, for the purpose of ascertaining whether Mrs. Rutger failed to look as she entered the eighteen foot strip over which respondent was approaching from her right or that she looked as she proceeded onto that portion of Nickerson street and failed to stop, following her testimony that she looked to the right when she saw respondent's automobile approaching as she intended to make a left turn in front of that approaching car, the following occurred:

"Q. And did you see the other car before you got into the center strip? A. Yes. Q. Where was it coming? A. It was coming down by the gasoline station. Q. Would you say about 100 to 200 feet? A. I think much further than that. Q. Which side of the street was it on? I mean was it on its right-hand side of the street? A. I don't know. I did not look close enough for that to measure it up. I saw the car coming, and that was all. He could not have been out very much because there is only room on that street for two cars. He may have been right in the middle of it. Q. It was all open in the middle? A. All gravel. Q. Would you

say he was on his right half of the street? A. He does not have to have half of the street. He could be right down the center and still be on the right side. Mr. HANNAN: Just a minute. By the right half of the street, do you mean? Mr. TRUSCOTT: His right half. Mr. HANNAN: Do you mean the entire west lane or do you mean the right half or left half? Mr. TRUSCOTT: I would say a car coming down the left side would be on the right half of the street, that is what I am asking this lady. Q. He was not coming down the open space, was he? A. Oh, no, I thought you meant . . . Mr. HANNAN: Just a minute. You answered it. Q. Were there cars at that time that were parked in the middle of the street? A. Yes, there were two cars parked in the middle of the street. Q. Where were they? A. Oh, if that was a full length, I would say they were about,—the two of them were parked close together, maybe a foot apart, at the end of where the name 'gravel' is there. Q. Would you put a cross about where those cars were parked? A. This is a long time since this happened, but I think this is about where they were. I would say the two cars were parked in there. Q. We will put in here 'parked cars', shall I? A. Yes. Q. Were there any cars parked in the middle of the street to the northwest of the intersection? A. No. Q. After you first saw this car you said you turned to the left and that you looked to the right and saw the other car coming? A. I saw the car coming. Q. And then you said you looked to the right or left? A. I looked to the left because there are cars that come up Third Avenue, and I had to look to the left. Cars that come up Third Avenue come right across, and that was only wide enough for two cars if you are careful going through. Q. Is it not true that when you made the turn you were practically through the intersection of Third Avenue? A. When I drove over that place at Third Avenue they had to turn to the left a little bit to get onto the paved part on your right-hand side because the car — Q. Please, just a minute. I asked you one question and you commenced talking about something else. A. I am explaining why I had to go this way. Q. Well, let's ask this question, Mrs. Rutger, is it not true when you looked to the right first you were in the middle of the street? A. Yes, I had turned in. Q. And were still proceeding. Then you say after you were there you looked to the left? A. Yes — Q. And by that time you were practically out of, — east of Third Avenue? A. By that time I was right in the, — the whole car was probably in the place between.

Q. You knew cars were coming from the left? MR. HANNAN: What do you mean by 'place between'? You mean oiled gravel? THE WITNESS: Pardon? MR. HANNAN: Oiled gravel? THE WITNESS: Yes, oiled gravel. Q. Third Avenue is just a little short graveled street about two blocks long, isn't it? A. I don't know how long it is, but cars come out of there. Q. Does that picture show Third Avenue? I am referring to Defendant's Exhibit 3. A. Well, I don't place this. Q. Pardon? A. Is this — Q. Calling your attention to the hydrant which is on the corner of — A. Yes, this is Third Avenue between these two telephone poles. Q. A little graveled street, isn't it? Is this the telegraph pole? A. This is the telegraph pole on the corner. Q. Well, I am just asking you if there is any question that is Third Avenue on that picture. A. If it is, it must be here. Q. Well, you said you were familiar with the district. Isn't Third Avenue a little graveled street about two blocks long? A. It runs right down to the water or down to a coal yard or something. I never drove on it; but there is a street that comes in there. Q. After you looked to the left you looked to the right again, — looked right back to the right, and how far had your car gone by that time? A. Well, it was moving all the time. You look this way and you turn and look again. Q. Tell me how far it had gone. A. Far enough when I saw him again I was right in front of him, and I stepped on the gas to get out of his way. Q. Where was he then? A. Oh — Q. Would you say he was close to you? A. What do you mean by close? Q. Well, you tell us then. A. He was far enough away that I thought I could get out of his way. Q. Was he in the intersection yet? A. No, he was not, because when he grabbed his wheel he came right around this corner. His wheels turned towards me. Q. You mean the Defendant turned around this corner? A. He did not turn around like that. He turned his wheel and turned to the right. If he had stayed directly straight he could not have caught my car at all. Q. Or if you had speeded up your car. A. I speeded up as fast as I could. Remember I had a Packard car, 1926 or 1927 model, and those cars are not as speedy as the cars today. Q. You were going about 18 or 20 miles an hour at that time? A. It must have been going a little faster than that. Just then I could not have been going very fast because I had stopped for the turn. Q. Did you put your brakes on at all? A. I always put my brakes on when I make a turn. Q. Did you put your brakes on at the time of this collision? A. No, I

was speeding up. I was trying to speed up. I was trying to speed up. Q. Did you blow your horn at all? A. No, I did not think about horns or nothing else. I was getting out of the guy's way. Q. Well, when you say you first saw this man coming he was a way down, is that correct? A. Yes. Q. You were in the middle? A. I had plenty of time to get across if he had been driving at 25 miles an hour. MR. TRUSCOTT: I move that that be stricken. THE COURT: Stricken. Q. At that time you were in that gravel strip in the middle of Nickerson Street, is that correct? A. Yes. Q. And at that time you then looked to the left and the right? A. Yes. Q. And all this time, every minute or second of time you were in that intersection, you knew a car was coming from your right? A. Yes. Q. Where was your car when you saw the Defendant's car the second time? I am not trying to hold you down to an exact pin point, but give me an idea of where you were when you saw him the second time. A. When he came right at me I don't know where I was, but I am telling you the best I can. Q. I am just asking your best judgment. A. When I looked this way he was coming toward me. Where my car was and his car was I can't tell you. Q. You can't tell? A. No. Q. And you don't know where the collision occurred, do you? A. No, because I was out. Q. Well, your right front was struck, was it not? A. I don't know anything about it. I never saw the car from that time on. . . . Q. Mrs. Rutger, if you had looked to your right at the time you started to enter the north half of Nickerson Street, you would have seen the car coming, wouldn't you? A. What is the question? (Question read.) A. I did see it coming. MR. HANNAN: I object to that as a conclusion. What she did is the evidence. THE COURT: Overruled. Q. Can you answer? A. I don't know what to answer. Q. How fast do you think you were going at the time you were in the center of this Nickerson Street? A. After we passed the 20-mile zone we probably went a little faster. I was following this other car. Probably he had gotten up to 25. MR. HANNAN: Just a minute. Just answer the question. THE WITNESS: I don't know then. Q. Could I ask you this, were your brakes good? A. Absolutely; finest in the world. They had just been new brakes less than a year before. Q. What distance do you think you could stop while you were in that street, — what distance would it take to stop? A. At what speed? Q. At the speed you were going. Your best estimate. A. I don't

know. Maybe — MR. HANNAN: If you don't know, say so. Just say you don't know. THE WITNESS: I don't know. I never tried to find out how quickly. If I am going 40, I can stop my car at twice the length of it. Q. Well, could you stop your car in a car length at the speed you were going in that place? A. Yes, I think so. Q. Now, when you started to go on this street here, onto that half where the Defendant's car was coming, you were looking to the left, weren't you? A. Yes. Q. You did not look to the right then as you entered that half of that street, did you? A. Well, I was moving right along, and I looked to the right and thought I had plenty of time to go across and looked to the left to see if a car was coming, and continued on, and then when I looked to the right again he was coming so fast toward me, I saw I had to hurry. MR. TRUSCOTT: Mr. Reporter, will you read the question? (Question read.) A. I had already looked at the right, and the street is only the length of a car. Q. Would you answer the question? Read the question. (Question read.) A. If I was entering that side of the street—THE COURT: Mrs. Rutger, if you can't answer the question, just say so. THE WITNESS: Well, I looked to the left and to the right. THE COURT: You can make your motion. MR. TRUSCOTT: I would move that she answer the question. THE COURT: That motion is fruitless. MR. TRUSCOTT: I move that the testimony be stricken. THE COURT: Motion granted. MR. HANNAN: Which is stricken? THE COURT: All of it, sir. MR. HANNAN: I take exception to the court's ruling."

It is clear from the foregoing that Mrs. Rutger, who the record discloses was an experienced witness, had operated a motor vehicle for twenty-five years, and at one time was an instructor in automobile operation, was aware that, if her answer to the question whether she looked as she entered the eighteen-foot strip over which respondent was approaching was in the negative—"a person, who testified that he looked and did not see an object which was plainly there to be seen, is bound to the same extent as though he had seen the object." *Cronin v. Shell Oil Co.*, 8 Wn. (2d) 404, 414, 112 P. (2d) 824, —or if she answered that she looked at that time and failed to stop, this would establish her negligence as the proximate cause of the accident.

■ The pertinency of the cross-examination is obvious. When Mrs. Rutger, as a plaintiff, offered herself as a witness and refused to answer proper questions on cross-examination, her entire testimony was properly stricken by the trial court. The statute provides:

"If a party refuse to attend and testify at the trial, or to give his deposition, or to answer any interrogatories filed, his complaint, answer or reply may be stricken out, and judgment taken against him, and he may also, in the discretion of the court, be proceeded against as in other cases for a contempt: Provided, that the preceding sections shall not be construed so as to compel any person to answer any questions where such answer may tend to criminate himself. [Cf. L. '54, p. 190, § 310; Cd. '81, § 408; L. '91, p. 34, § 6; 2 H. C., § 1665]" Rem. Rev. Stat., § 1230 [P. C. § 7764].

In *Thomas v. Dower,* 162 Wash. 54, 297 Pac. 1094, we held that the entire testimony of a plaintiff who offered himself as a witness and refused to answer proper questions on cross-examination, was properly stricken. See, also, *Citizens Bank & Trust Co. v. Reid Motor Co.,* 216 N. C. 432, 5 S. E. (2d) 318, and *Aluminum Industries v. Egan,* 61 Ohio App. 111, 22 N. E. (2d) 459.

"Where a witness refuses to answer, or answers evasively, pertinent questions on cross-examination, his testimony on his direct examination should be stricken out, especially where the witness is a party testifying in his own behalf." 70 C. J. 618.

■ Following respondent's challenge to the sufficiency of the evidence, counsel for appellants, on the ground that the striking of all of Mrs. Rutger's testimony came as a complete surprise to appellants' counsel, moved that the case be reopened to permit Mrs. Rutger to testify further. Exercising a sound discretion in the matter, the court denied the motion.

■ Counsel for appellants argue that the rule which imposes the duty upon the operator of a vehicle on approaching a public highway intersection to look out for and give right of way to vehicles on his right simultaneously approaching a given point within the intersection, is inap-

plicable, as the photographs taken immediately after the collision show that the point of impact was on Florentia street and not within the intersection; and that, to avoid a finding of negligence, it was incumbent upon respondent to explain the cause of his collision with appellants who were traveling easterly on Florentia street and entirely outside of the intersection at the time of the collision. It is urged that

"Since the jury could find that the cars were not approaching a 'given point' within the intersection, such a finding would mean that the respondent did not have the right of way, even though he was on the right as he approached this intersection, and this would accentuate his duty to give a satisfactory explanation of how he happened to collide with appellant's car when she was on Florentia Street."

While it may be true that the collision of the two automobiles occurred east of the eastern boundary of Nickerson street, the train of circumstances from which that collision resulted had its origin in the situation of the drivers as they entered the intersection. In effect, as we held in *Hook v. Kirby*, 175 Wash. 352, 27 P. (2d) 567, under similar circumstances, the accident was commenced within the intersection even if it culminated without the intersection. It still is a right of way case.

In the absence of Mrs. Rutger's testimony, which was properly stricken, there is no evidence other than that there was an accident, which is not proof of negligence. Appellants did not sustain the burden imposed upon them of proving that respondent was negligent and that his negligence was a proximate cause of the collision.

The judgment is affirmed.

SIMPSON, C. J., ROBINSON, and MALLERY, JJ., concur.

BLAKE, J., dissents.

January 27, 1944. Petition for rehearing denied.