[No. 3491-2.   Division Two.   November 21, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. LAWRENCE E. GAKIN, *Appellant.*

682

*John L. Farra,* for appellant (appointed counsel for appeal).

*Curtis M. Janhunen, Prosecuting Attorney,* for respondent.

PEARSON, C.J.—Defendant Lawrence Gakin appeals his second–degree burglary conviction. The chief issue on appeal concerns the propriety of a ruling which allowed in evidence defendant's confession to a prior burglary. He also challenges one instruction given by the trial court and the refusal of three of his proposed instructions. We find no error and affirm the conviction.

The facts giving rise to this prosecution commenced with the burglary of Star Electric in Hoquiam during the night of March 7, 1978. The burglar broke in through the back door, drilled two holes near the handle of a safe, and departed with various items of merchandise. Early the next morning, after the burglary was reported by the owner, police discovered distinctive tennis shoe footprints leading to and from the rear entrance to the establishment. These tracks were traced to a residence a short distance away which was occupied by defendant and several other persons. A search warrant was executed about 1 p.m. on March 8. Police officers found defendant, his sister, and another male occupant in the house. They also noted that defendant's pants were wet to the knees and his tennis shoes were wet and muddy. In addition, they found various items stolen from Star Electric as well as an electric drill, with bit attached, in defendant's bedroom. The drill bit was the

same size as the holes drilled in the safe and the bit contained shavings that appeared to be brass; the shavings were similar to those found near the safe at Star Electric. A state criminalist testified that plaster casts of the footprints matched the soles of defendant's tennis shoes.

Defendant testified that he did not commit the burglary. His defense was that some other occupant of the house, perhaps an unidentified male who left the house during the morning of March 8, must have committed the burglary. Over objection, the prosecuting attorney was allowed to cross–examine defendant concerning a burglary he had pleaded guilty to 3 months earlier.

The context of this cross–examination and the extent to which the prosecuting attorney was allowed to inquire of defendant as to the details of the burglary are as follows:

Q [By Mr. Janhunen.] Have you ever been convicted of a crime?[1]

A [By defendant.] Yes, I have.

Q What?

A Second degree burglary.

. . .

Q And what did you burglarize?

A A service station.

Q Do you know how to drill a hole in a safe to gain entrance?

A No.

Q Have you ever done it before?

. . . [Objection colloquy. Objection overruled.]

A No.

Q Mr. Gakin, is it not true that you entered a plea of guilty to the burglary of Henning's Shell Station in Aberdeen?

A Yes, it was.

Q And isn't it true that at that time an attempt to gain entrance into a safe in that station was attempted by use of a drill?

A Yes.

Q By you?

---

[1]This question was proper to affect defendant's credibility by virtue of RCW 10.52.030.

A No.

Q Excuse me?

A No, sir.

Q Mr. Gakin, I'm going to show you a statement marked identification number 37 and ask if you can recognize that signature.

The defendant acknowledged that he had signed exhibit 37—a written confession to the prior burglary in which defendant described the manner in which he successfully drilled into the safe at the Shell station. Defendant then repudiated the confession, explaining that his plea of guilty was entered because he was "taking the rap" for a friend. It should be noted that the confession would not be admissible by virtue of RCW 10.52.030. *State v. Brewster*, 75 Wn.2d 137, 449 P.2d 685 (1969); *State v. Beard*, 74 Wn.2d 335, 444 P.2d 651 (1968); *State v. Butler*, 9 Wn. App. 347, 513 P.2d 67 (1973). However, it was admitted in evidence, defendant's motion for a mistrial was denied, and the jury convicted defendant of the second–degree burglary.

On appeal, defendant relies on the rule which excludes evidence of unrelated crimes except where such evidence shows motive, intent, absence of accident or mistake, a common scheme or plan, identity, or evidence somehow relevant and necessary to prove an essential ingredient of the crime charged. *State v. Mack*, 80 Wn.2d 19, 490 P.2d 1303 (1971); *State v. Goebel*, 40 Wn.2d 18, 240 P.2d 251 (1952). He claims that the confession has little relevance to any of the listed exceptions, and in any event the prejudicial effect of the confession outweighs any relevance. We disagree.

In *State v. Goebel, supra*, the Supreme Court indicated that the exceptions to the general rule are not necessarily exclusive. The true test is whether the evidence is relevant and necessary to prove an essential ingredient of the crime charged.

Defendant's identity as the perpetrator of the burglary was the principal issue in this prosecution. Traditionally, if identity is in issue, courts have analyzed the relevance of

the offered evidence with reference to whether or not it tended to identify defendant as the likely perpetrator of the crime. *See State v. Whalon,* 1 Wn. App. 785, 464 P.2d 730 (1970). *Cf. State v. Irving,* 24 Wn. App. 370, 600 P.2d 954 (1979). A strong case can be made for admissibility of defendant's confession by using this traditional approach. Given the sophisticated nature of committing a crime involving safe drilling, defendant's knowledge of how to drill a safe is certainly relevant and material on the issue of his identity, particularly because the crime occurred in a small community where the number of "professional" safe drillers is probably limited.

However, we prefer to ground the admissibility of defendant's confession ,to the prior burglary on what we perceive to be another unstated but nevertheless necessary exception to the general exclusionary rule of *State v. Goebel, supra.* We do this because under the *Goebel* analysis the trial court, after weighing the relevance of the evidence against its prejudicial effect, is required to instruct the jury as to the limited purpose for which it is admitted. *See State v. Whalon, supra.* This was not done in the case at bench, nor was any cautionary instruction requested by defendant. Accordingly, the jury was allowed to consider the evidence both to impeach defendant's testimony and as substantive evidence of his guilt. *See State v. Goebel,* 36 Wn.2d 367, 218 P.2d 300 (1950).

The exception to which we refer would allow evidence of unrelated criminal conduct both as impeachment evidence and as substantive evidence, despite the danger of undue prejudice, when the defendant has interposed a defense to the crime charged and the offered evidence is relevant and necessary to refute the defense. *See* 1 C. Torcia, *Wharton's Criminal Evidence* § 258, at 619 (13th ed. 1972). The reason for this exception is that it would be basically unfair to allow a defendant to raise a defense and not allow the State an opportunity to impeach it, solely because the impeachment shows prejudicial details concerning defendant's participation in another crime. Under

these circumstances, the evidence becomes highly probative and should be deemed to substantially outweigh the danger of unfair prejudice. *See* ER 403. The search for the truth, the ultimate objective of a criminal trial, would be defeated by a contrary result.

■■ The origin of this exception as well as its limitations are found in cases which have construed and applied RCW 10.52.040. This statute provides that when a defendant takes the stand in his own defense he is subject to all the rules of cross–examination that apply to other witnesses. *State v. Etheridge,* 74 Wn.2d 102, 443 P.2d 536 (1968); *State v. Robideau,* 70 Wn.2d 994, 425 P.2d 880 (1967). One such rule is that a witness may be subject to cross–examination on any subject which is within the scope of his direct examination. *State v. Robideau, supra.*[2]

Another rule applicable to all witnesses is that a witness may be impeached by use of a prior inconsistent statement where the impeachment relates to a material, as opposed to a collateral, matter. *State v. Kritzer,* 21 Wn.2d 710, 152 P.2d 967 (1944). The test for determining whether or not the impeachment fact is collateral or material is: Could the fact have been shown in evidence for any purpose independently of the contradiction? *State v. Gilmore,* 42 Wn.2d 624, 257 P.2d 215 (1953); 3A J. Wigmore, *Evidence* § 1003, at 961 (rev. ed. 1970).

Applying these rules to the case at bench, we first consider the propriety of the prosecutor's question which precipitated this issue. The question—"Do you know how to drill a hole in a safe to gain entrance?"—did not relate directly to any testimony that defendant had given on direct. It was, however, designed to probe and challenge defendant's testimony that he did not commit the burglary, and the necessary inference from that testimony that some other occupant of the house had committed it. Given the fact that a drill with a bit of the right size was found in

---

[2]Questioned on an unrelated issue in *State v. Upton,* 16 Wn. App. 195, 556 P.2d 239 (1976).

defendant's bedroom, which defendant testified on direct examination had been occupied by another person, it was within the proper scope of examination to ask defendant whether he knew how to drill a safe.

The latitude of inquiry on cross–examination is not limited to the specific questions answered by defendant on direct examination. It extends to the development and exploration of any relevant subject unfolded on direct examination, subject to the trial court's discretion. *State v. Robideau, supra. See State v. Baylor,* 17 Wn. App. 616, 565 P.2d 99 (1977).

When defendant denied that he knew how to drill a safe, he was representing to the jury that not only was he not the burglar, but that he lacked the requisite knowledge to commit the crime. Thus he was asserting an additional defense. Use of that portion of the confession which demonstrated his knowledge of how to drill a safe impeached his answer that he lacked such knowledge and refuted his defense. In this sense, the impeachment fact is not a collateral matter, but is material. It relates directly to the defense raised and also establishes defendant as the probable burglar. *Cf. State v. Goebel,* 36 Wn.2d 367, 218 P.2d 300 (1950).

To let defendant's representation stand solely because of the highly prejudicial nature of the confession would be unfair to the State. It would also distort the truth–finding function of the trial. Clearly, use of the confession would have been proper on rebuttal. We conclude therefore that admissibility of the confession during cross–examination of defendant was proper, both as impeachment and as substantive proof to refute the defense that defendant lacked the knowledge necessary to commit the crime. For this reason, we think no limiting instruction concerning the purpose of the evidence was necessary. *Cf. State v. Whalon, supra.*

Defendant next complains that the court erred in rejecting his proposed instruction that the State's failure to produce certain evidence allowed the jury to infer that such evidence would have favored the accused. The instruction

related to certain physical evidence sent to the state crime laboratory. The State's expert witness testified that the Aberdeen police had sent to the laboratory the shavings found near the safe and those found on the drill bit, as well as other items. The laboratory did not analyze these items of evidence because of time constraints. There is no claim here that the State suppressed any evidence. An instruction similar to the one requested here was explicitly rejected in *Seattle v. Fettig,* 10 Wn. App. 773, 519 P.2d 1002 (1974), and no other authority has been cited which supports tha proposed instruction.

Defendant also complains that the court did not give his more amplified instruction on the State's burden of proof. The court gave WPIC 4.01, which is an appropriate and proper statement of the State's burden; defendant's proposed instruction would have advised the jury that a defendant never has a burden to call witnesses or produce evidence. This instruction was properly rejected, as it had the potential for confusing the jury where defendant does produce evidence in his own behalf.

Defendant also complains of error in the trial court's refusal to give a multiple hypothesis instruction. Use of this type of instruction was specifically rejected in *State v. Rockwell,* 86 Wn.2d 393, 544 P.2d 1250 (1976). The case relied upon by defendant did not discuss the validity of this type of instruction, as it was not challenged on appeal. *United States v. Zumpano,* 436 F.2d 535 (9th Cir. 1970).

Finally, defendant's pro se brief reargues the facts, again asserting that his confession to the prior burglary was false. He alleges the footprints were those of the police and someone else in the house committed the burglary. He also asserts that the trial court and prosecutor were personally biased against him. These arguments are patently frivolous.

Judgment affirmed.

PETRIE and REED, JJ., concur.

Reconsideration denied December 6, 1979.

Review denied by Supreme Court February 15, 1980.