[Nos. 4458–II; 4626–II.   Division Two.   September 4, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. PETER ROBERT OLSON, ET AL, *Defendants,* CAROL ELAINE WADE, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. PETER ROBERT OLSON, ET AL, *Defendants,* NORMA WADE, *Appellant.*

*Judith M. Mandel* of *Pierce County Department of Assigned Counsel,* for appellants.

*C. Danny Clem, Prosecuting Attorney,* and *Ronald A. Franz, Deputy,* for respondent.

PETRICH, J.—On July 18, 1979, Norma and Carol Wade attended a meeting at the Ground Zero Center in Kitsap County. Dorothy Peterson, the owner of the farm condemned by the State in conjunction with the building of an access highway to the Trident Nuclear Submarine Base at Bangor, Washington, spoke at the meeting. Peterson informed the group about the status of litigation aimed at stopping construction of the highway and told the group that although legal actions were still pending, the State was scheduled to begin bulldozing on the Peterson farm the next morning. The group was advised that the Petersons had been told by their attorney that the State would be acting illegally if it began bulldozing operations on July 19.

A second meeting of Ground Zero Center members was held later the same day. At the second meeting, small groups discussed possible methods of delaying the construction. Both Norma and Carol Wade attended the second meeting.

The next morning, the Wades and others pulled up sur-

vey markers placed by the Washington State Department of Transportation and blocked the unloading of a piece of heavy equipment. The Wades were arrested and charged with first degree malicious mischief, failure to disperse and disorderly conduct. Both Norma and Carol Wade admitted pulling up the survey markers and blocking the unloading of the piece of heavy equipment, but contended that because they reasonably believed the State's actions were unlawful, they lacked the necessary criminal intent.

The Wades were tried with five other codefendants. After hearing the trial court's ruling as to the scope of cross-examination allowed as to one of the codefendants, both Norma and Carol advised the court that they would not testify on their own behalf. At the time of making such decision, the attorney representing the Wades made a summary offer of proof. Norma subsequently decided to testify. On direct examination, Norma testified that she attended the two meetings held on July 18, 1979, and that at the second meeting various methods of delaying the construction of the highway were discussed. On cross-examination, the State asked Norma to give the names of the other individuals who had attended the second meeting. Norma refused to reveal the names on "moral" grounds. After argument by the parties, the trial court ruled that the question was relevant and, upon Norma's continued refusal to answer, struck her testimony. Because of the trial court's ruling, Carol Wade elected not to testify on her own behalf. Both Carol Wade and Norma Wade appealed.

Two issues are raised on appeal. First, did the trial court abuse its discretion when it ruled that the names of the other individuals present at the second July 18 meeting were the proper subject of cross-examination? Second, if the names were a proper subject of cross-examination, did the sanction imposed by the trial court impermissibly infringe upon defendants' constitutional right to testify guaranteed by article 1, section 22 of our constitution?

■■ A defendant who takes the stand to testify on his own behalf is subject to the rules governing cross-exami-

nation of other witnesses. RCW 10.52.040. *See also State v. Robideau,* 70 Wn.2d 994, 425 P.2d 880 (1967); *State v. Gakin,* 24 Wn. App. 681, 603 P.2d 380 (1979). One of such rules is that a witness may be cross–examined upon material matters within the scope of his direct testimony. *Id.*

The decision as to whether a particular topic is the proper subject of cross–examination is within the sound discretion of the trial court. *State v. Etheridge,* 74 Wn.2d 102, 443 P.2d 536 (1968); *State v. Baylor,* 17 Wn. App. 616, 565 P.2d 99 (1977). The trial court may, within its discretion, grant considerable latitude in cross–examination; once a witness has testified as to a general subject on direct examination, the cross–examination may develop and explore various phases of that subject. *Id.* The trial court's decision to allow or not allow cross–examination on a particular subject will be overturned on appeal only upon a showing that the trial court abused its discretion. *State v. York,* 28 Wn. App. 33, 621 P.2d 784 (1980).

During her direct examination, Norma Wade testified that she attended the second meeting held on July 18, 1979, and that individuals present at the meeting discussed various methods of delaying construction of the highway. By testifying that she attended the meeting, Norma made the meeting an appropriate topic for cross–examination. The names of the other individuals present at the meeting were relevant; the State may have wished to examine the other individuals regarding discussions that took place at the meeting concerning the criminal nature of the acts planned by the group.

Having found that the names of the other individuals present at the meeting were the proper subject of cross–examination, we must next decide whether the sanction imposed by the trial court was appropriate. The trial court had four alternatives: (1) it could order Norma's direct testimony stricken; (2) it could find Norma in either civil or criminal contempt for failing to answer a proper question upon direction of the court; (3) it could instruct the jury that Norma's failure to answer a proper question should be

considered by the jury in determining Norma's credibility as a witness; or (4) it could impose no sanction. *See generally Rutger v. Walken,* 19 Wn.2d 681, 143 P.2d 866 (1943). After considering its alternatives, the court decided to strike Norma's testimony.

██ Although members of this court may not have selected the alternative chosen by the trial court, the trial court did not exceed its authority or abuse its discretion when it decided to strike Norma's testimony. The Supreme Court has held that the direct testimony of a party witness should be stricken when the party refuses to answer a question on cross–examination. *Rutger v. Walken, supra. Accord,* E. Cleary, *McCormick on Evidence* § 19 (2d ed. 1972); 5 R. Meisenholder, Wash. Prac. § 263 (1965). The trial court acted in accordance with such authority.

Accordingly, the decision of the trial court is affirmed.

PEARSON, J., concurs.

REED, C.J. (concurring specially)—I concur, but believe additional comment is justified. In my opinion these appeals are patently frivolous and totally lacking in merit; sanctions on this level would be appropriate. All the more so because the crime in question, malicious mischief in pulling up the survey stakes and blocking the State's machinery requires only that the act be done "knowingly and maliciously." RCW 9A.48.070(1)(a);[1] 9A.04.010(12); 9A.08-.010. The only reason given by defendants for taking the witness stand—to establish their lack of criminal intent—was untenable. *Cf. State v. Nelson,* 17 Wn. App. 66, 561 P.2d 1093 (1977); *State v. Jury,* 19 Wn. App. 256, 576 P.2d 1302 (1978). By admitting to committing the acts deliberately for the avowed purpose of frustrating, delaying, and

---

[1]RCW 9A.48.070(1)(a) provides:

"(1) A person is guilty of malicious mischief in the first degree if he knowingly and maliciously:

"(a) Causes physical damage to the property of another in an amount exceeding one thousand five hundred dollars; . . ."

hindering the State, defendants admitted they acted maliciously; they had no defense. Thus, defendants cannot have suffered from having their direct testimony stricken.

In my view, to accept defendants' argument on appeal would be to condone courtroom activities designed and intended to frustrate and obstruct the administration of justice. The trial judge properly could have stricken the testimony or committed defendant, Norma Wade, to jail until she should answer. It is inconceivable to me how defendants seriously can argue they are entitled to impose their will and philosophical views upon the court and society and, at the same time complain of a deprivation of rights. If harm there be, it is self–inflicted injury of the highest order. Yet, with taxpayers of the State of Washington footing the bills all the way, defendants will likely seek reconsideration of this decision and further review by our State Supreme Court.

Reconsideration denied September 28, 1981.