IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34059-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ADRIAN RAY LOPEZ, | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Adrian Lopez appeals from convictions for first degree child rape and child molestation, raising objections to evidentiary rulings and the prosecutor's closing argument. We affirm.

FACTS

Mr. Lopez, 20, would sometimes babysit his two youngest siblings in the summer of 2011.[1] I.G. was 8 and N.L. was 5 that summer. In 2013, I.G. reported that Mr. Lopez had sexually touched her in the summer of 2011. The parents reported the disclosure to the Pasco Police Department and an investigation ensued.

---

[1] Living in a blended family, he had a half-brother, a stepsister, and a brother and sister. The charges involve his stepsister.

Four charges were filed involving I.G. The jury was unable to return a verdict at the first trial in September 2015. A second trial was conducted in December 2015, over four years after the last of the alleged incidents. Prior to the retrial, several rulings were entered that have some bearing on this appeal.

The State moved in limine to exclude allegation of a third party perpetrator. Mr. Lopez alleged that his father, N.L., had sexually assaulted his sister (N.L.'s oldest daughter), A.L. The court ruled that Mr. Lopez could not suggest that N.L. had committed the crime against I.G., but he was allowed to question detectives concerning their investigation of members of the household. At trial, the court reversed itself and sustained the prosecutor's objection to a question asking a detective if any other household member had been investigated.

During motions in limine, defense counsel stated "this case, it's a he said, she said case, where a little girl made up a story." Report of Proceedings (RP) at 27. Pursuing the strategy at trial, the defense asked the detective questions about whether it was important to corroborate whether the child was telling the truth, why I.G.'s stories did not match, and whether the detective had made a critical examination of the child's statements. The prosecutor promptly asked the next witness, I.G.'s father, if I.G. was "the type of child that would make up a story to get attention." Over objection, the father was allowed to answer, "no."

2

Also, during the mother's testimony, the State sought to admit three photographs of I.G. at age 8. The defense objected on relevance grounds and the prosecutor argued that they were necessary to illustrate her size and what I.G. looked like at that time. The court permitted use of one photo that was shown to the jury for demonstrative purposes only and was not admitted into evidence.

Several times questions were asked or answers given that used the word "victim" in reference to I.G. There was no motion in limine concerning use of the term and no objections to its use raised during testimony. In closing argument, the defense unsuccessfully objected to the prosecutor's repeated use of the word "re-victimized" in the same sentence. Also, during closing, the prosecutor referred to the burden of proof beyond a reasonable doubt as "more than 50 percent, but it's not a 100 percent." There was no objection to the argument.

The prosecutor conceded in argument that one of the counts was not proved and, the court dismissed the count. The jury returned guilty verdicts on the three counts submitted to it. The court ordered a thorough presentence investigation (PSI) as required for convicted sex offenders. The court considered the information in the PSI when imposing legal financial obligations (LFOs). Mr. Lopez had been represented by retained counsel at trial, but was found indigent for purposes of appeal.

An appeal was timely taken and counsel was appointed for Mr. Lopez at public expense. A panel considered this case without argument.

## ANALYSIS

The appeal raises an argument concerning two aspects of the prosecutor's closing argument and several arguments concerning the noted trial testimony. We first address the closing argument claim before turning to the evidentiary arguments. We finally address two contentions concerning financial aspects of this case.

*Closing Argument*

Mr. Lopez contends that the prosecutor erred in closing argument by using the word "re-victimized" and in referring to the burden of proof in statistical terms. There was no error.

Familiar standards govern review of these claims. The appellant bears the burden of demonstrating prosecutorial misconduct on appeal and must establish that the conduct was both improper and prejudicial. *State v. Stenson*, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997). Prejudice occurs where there is a substantial likelihood that the misconduct affected the jury's verdict. *Id.* at 718-19. The allegedly improper statements should be viewed within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions. *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).

Reversal is not required where the alleged error could have been obviated by a curative instruction. *State v. Gentry*, 125 Wn.2d 570, 596, 888 P.2d 1105 (1995). The failure to object constitutes a waiver unless the remark was so flagrant and ill-intentioned

4

that it evinced an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. *Id.*; *State v. Swan*, 114 Wn.2d 613, 665, 790 P.2d 610 (1990); *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988). Finally, a prosecutor has "wide latitude" in arguing inferences from the evidence presented. *Stenson*, 132 Wn.2d at 727.

The prosecutor argued that inconsistencies arose due to all of the times I.G. had to tell her story; she described those repeated retellings of the child's story as "re-victimizing" I.G. The court overruled defense counsel's objection to "[t]he characterization of re-victimized," citing "[i]t's closing." RP at 290-291. Mr. Lopez now claims that this statement constituted "a comment on the evidence." Br. of Appellant at 23. It is doubtful that his trial objection can be stretched into that claim. Assuming, however, that it was an objection on the same basis now being argued, it is without merit.

The context is telling in this instance. The prosecutor used the word "re-victimized" in reference to the number of occasions I.G. had to disclose details of the sexual abuse rather than in references to the existence of sexual abuse. As such, it was not a comment on the truthfulness of her testimony about the crimes. There was no error.[2]

---

[2] Even if the prosecutor had been referring to the sexual assaults, using the term "victim" in closing argument would not have constituted error. I.G.'s testimony supported a determination that she was a victim of sexual assault and the prosecutor could argue that the evidence supported that characterization.

More problematic is the reference to proof beyond a reasonable doubt as greater than 50 percent and less than 100 percent. This statement was not challenged, so relief is appropriate only if the remark meets the standard of "flagrant and ill-intentioned," with resulting nonremediable enduring prejudice. *Gentry*, 125 Wn.2d at 596. It does not.

Mr. Lopez likens this to cases where prosecutors, using analogies to incomplete puzzle pictures, argued that a juror could be satisfied beyond a reasonable doubt with only 50 percent of the pieces in place, an argument that improperly lowers the burden of proof. *E.g., State v. Lindsay*, 180 Wn.2d 423, 436, 326 P.3d 125 (2014). One problem with such arguments is that they attempt to quantify the concept of reasonable doubt. *Id.* Our courts have not attempted to quantify that concept in the past and are unlikely to do so in the future.

The prosecutor did not attempt here to do so and the prosecutor's remarks could not be construed as suggesting that 50 percent is enough to satisfy the beyond a reasonable doubt standard. The remark was made in the context of trying to say that absolute certainty was not required to satisfy the standard, but that the prosecutor did not know what level of lesser certainty was appropriate. This statement did not fall into the category of an attempted quantification.[3] To the extent that the first portion of the remark

---

[3] Nonetheless, we strongly discourage arguments that apply numerical concepts to the burden of proof beyond a reasonable doubt. Mathematical expressions imply a level of precision and certainty that our courts have not attempted to apply to this standard and can too easily be misconstrued.

("more than 50 percent") might have been capable, in isolation, of being misconstrued, it was not such an egregious error that a curative instruction would have been unavailing.[4]

Because the prosecutor was not trying to quantify the level of certainty she needed to establish, this remark was not such an irremediably egregious misstatement of the law that relief is available to Mr. Lopez. Appellant has not established that the prosecutor committed misconduct in closing argument.

*Trial Testimony*

Mr. Lopez raises numerous claims of error related to testimony admitted at trial. After initially noting the standards that govern review of these contentions, we will turn to consideration of his claims seriatim.

As with the previous topic, the standards of review governing these issues are very well settled. Trial court judges have great discretion with respect to the admission of evidence and will be overturned only for manifest abuse of that discretion. *State v. Luvene*, 127 Wn.2d 690, 706-07, 903 P.2d 960 (1995). Discretion is abused where it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Furthermore, the failure to raise an evidentiary objection to the trial court waives the objection. *State v. Guloy*, 104 Wn.2d 412, 422, 705

---

[4] The failure of the defense to object also is evidence that correction is unnecessary. *Swan*, 114 Wn.2d at 661 (noting that the absence of an objection or motion for mistrial "strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial").

P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986); *State v. Boast*, 87 Wn.2d 447, 451-452, 553 P.2d 1322 (1976). As explained in *Guloy*:

> A party may only assign error in the appellate court on the specific ground of the evidentiary objection made at trial. Since the specific objection made at trial is not the basis the defendants are arguing before this court, they have lost their opportunity for review.

104 Wn.2d at 422 (citation omitted).

Another general rule that also is at issue in this case is that appellate courts will not consider an issue on appeal that was not first presented to the trial court. RAP 2.5(a); *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). However, RAP 2.5(a)(3) permits a party to raise initially on appeal a claim of "manifest error affecting a constitutional right." This authority is permissive; an appellate court will refuse to consider such issues if the record is not sufficient to permit review of the claim. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995).

With these principles in mind, it is time to address Mr. Lopez's specific evidentiary arguments.

*Use of the word "victim."* In conjunction with his previous prosecutorial misconduct argument, Mr. Lopez argues that it was error for the prosecutor and witnesses to use the word "victim" during questioning and testimony. There was no effort made pretrial to prohibit use of the term and no objection was ever raised during testimony.

Accordingly, this claim is waived unless Mr. Lopez can establish that use of the word constituted manifest constitutional error. He cannot.

Mr. Lopez correctly acknowledges that no Washington case has found use of this term constitutes manifest constitutional error, and he notes a previous unpublished case from this division where we indicated there *may* be some circumstances where it would constitute a comment on the evidence to use the term, but declined to find error in that circumstance. *State v. McFarland*, No. 32873-2-III (Wash. Ct. App. Mar. 8, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/328732.unp.pdf. He, therefore, has no basis for his argument that use of the word constituted manifest constitutional error.[5]

This argument is unpreserved.

*Photo of I.G. at age 8.* Mr. Lopez next challenges the display to the jury of a picture of I.G. at the time of the alleged offenses when she was age 8. The defense objected to the relevance of this evidence, so the issue has been preserved for our review.

---

[5] We also note that this is exactly the type of argument that RAP 2.5(a) is intended to foreclose. An objection at trial could easily have cured any potential problem and have avoided putting the parties through a flawed trial. Parties should not allow alleged evidentiary errors to go forward without challenge and then complain about them on appeal following an adverse verdict. We also think the *Swan* observation noted earlier has force here. The failure to object is significant evidence that the defense perceived no error at trial. 114 Wn.2d at 661.

Evidence is relevant if it makes "the existence of any fact that is of consequence to the determination of the action more probable or less probable." ER 401. Relevant evidence is generally admissible at trial, but can be excluded where its value is outweighed by other considerations such as misleading the jury or wasting time. ER 402; ER 403.

The trial court deemed the evidence relevant due to the passage of time between the events at issue and the trial. Nearly four and one-half years had passed from the summer 2011 incidents and the December 2015 trial. I.G. was no longer 8 years old and apparently had gained weight after these events. These are tenable reasons for displaying the picture of the child to the jury. Her physical ability to resist advances in 2011 may have been significantly different than it appeared in 2015.

While there appears to be little value to the photograph, we cannot say that there was none. The trial court did not err in allowing demonstrative use of a photograph.

*Investigation of father.* Mr. Lopez next argues that he was deprived of his ability to put forth a defense when the court prevented him from asking the detective whether others in the house had been investigated. Since he admitted he was not alleging that his father sexually assaulted I.G., there was no relevance to his question.

The federal and state constitutions guarantee a defendant the opportunity to present a defense to the crime charged. *Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct.

1920, 18 L. Ed. 2d 1019 (1967); *State v. Thomas*, 150 Wn.2d 821, 857, 83 P.3d 970 (2004); *State v. Maupin*, 128 Wn.2d 918, 924, 913 P.2d 808 (1996). There is, however, no right to present irrelevant or inadmissible evidence. *State v. Hudlow*, 99 Wn.2d 1, 15, 659 P.2d 514 (1983).

Prior to the second trial, the prosecutor moved in limine to prohibit testimony about N.L. allegedly molesting A.L. in the past. Defense counsel agreed that he would not be presenting third party perpetrator evidence, but did desire to cross examine the police about their investigation of the case and whether anyone in the house had been investigated. RP at 21, 25. The court indicated it would permit the inquiry, but also ruled that it did not want "any intimating, insinuating, or anything like that." RP at 25. Defense counsel cross examined a police sergeant extensively about the police investigation. RP at 85-94. However, when counsel asked whether police had "investigated anyone else in the case," the prosecutor objected. RP at 94. The court sustained the objection, ruling the question inappropriate and reversing itself "[i]f I said that." RP at 94.

Mr. Lopez now contends that the court denied his right to present a defense (1) by reversing itself concerning the question about investigating others in the household, and (2) by prohibiting "other suspects" evidence. The second argument is contrary to the facts of this case and will not be entertained here other than to note that defense counsel expressly and repeatedly told the court at two separate hearings that he was not

11

presenting other suspects evidence. RP at 21-22, 24. The court did not exclude the evidence because the defense never sought to offer it.[6]

The court did not err by sustaining the objection to the question. The defense had previously agreed that it was not presenting an "other suspects" defense in light of its general denial defense, and the trial court ruled that there would be no "intimating [or] insinuating" that N.L. had committed the crime. Yet, the defense still sought to inquire about whether N.L. (the only adult male in the household) had been investigated in violation of the court's ruling on the topic. Whether N.L. specifically had been investigated was information that only would have supported the rejected "other suspects" defense. If the true interest of the inquiry concerned the quality of the police investigation, then a properly phrased question would have been something along the lines of "did the police investigate only my client?" or other, neutrally phrased questions that did not seek to point out a specific other individual. Not only would that phrasing have satisfied the court's earlier rulings, it still would have supplied the answer sought—N.L. had not been investigated because no one else had been investigated.

---

[6] Contrary to the appellant's assertion that it had strong "other suspects" evidence, it actually had next to nothing on point. There must be significantly more evidence than motive and opportunity to commit the crime before the defendant can accuse another of the crime. *See generally State v. Starbuck*, 189 Wn. App. 740, 355 P.3d 1167 (2015), *review denied*, 185 Wn.2d 1008 (2016) and the authorities cited therein.

The question asked was not relevant in light of the defense decision not to pursue an "other suspects" defense. The relevant question was not asked. The court did not err in excluding the irrelevant question.

*Vouching for I.G.* Mr. Lopez also argues that the court erred in permitting the prosecutor to ask if I.G. was the type of child to make up stories to gain attention. The defense opened the door for this limited question.

It is improper for one witness to testify about the credibility of another witness. *State v. Korum*, 157 Wn.2d 614, 651, 141 P.3d 13 (2006). A defendant claiming error in this regard must show that there was improper and prejudicial conduct that had a substantial likelihood of affecting the jury's verdict. *Id.* at 650. Testimony does not amount to error unless it is "a nearly explicit statement by the witness that the witness believed the accusing victim." *State v. Kirkman*, 159 Wn.2d 918, 936, 155 P.3d 125 (2007).

The prosecution contends there was no vouching at all because the question and answer did not rise to the level of a nearly explicit statement. We need not answer that argument, however, because the defense clearly opened the door to the topic. The trial court has discretion to admit evidence that otherwise might be inadmissible if the defendant opens the door to the evidence. *State v. Bennett*, 42 Wn. App. 125, 127, 708 P.2d 1232 (1985) (citing *State v. Gefeller*, 76 Wn.2d 449, 455, 458 P.2d 17 (1969); *State v. Olson*, 30 Wn. App. 298, 633 P.2d 927 (1981)).

13

The defense claimed this was a "he said, she said" case where I.G. made up the accusation. To that end, the defense pointed out the inconsistent statements the child gave over the course of the investigation. Her character for truthfulness was clearly put in issue. The topic was thus relevant. ER 404(a)(2). Having opened the door to this topic, Mr. Lopez cannot claim there was error in responding to his invitation.

Mr. Lopez has not established any evidentiary error that deprived him of a fair trial.

*Financial Matters*

Finally, Mr. Lopez argues that the trial court did not adequately inquire into his ability to pay the LFOs imposed at sentencing and that this court should waive recoupment of appellate expenses. A majority of this court concludes that the trial court did not err in imposing LFOs at sentencing. We defer the issue of appellate costs to our commissioner.

The trial court determined that Mr. Lopez, who was represented by retained counsel at trial, had the ability to pay LFOs. We review the trial court's decision to impose LFOs for abuse of discretion. *State v. Clark*, 191 Wn. App. 369, 372, 362 P.3d 309 (2015) (citing *State v. Baldwin*, 63 Wn. App. 303, 312, 818 P.2d 1116 (1991)).

Mr. Lopez argues that the trial court's inquiry was inadequate.[7] We disagree. The court received a thorough PSI that included information about Mr. Lopez's work history and finances. He had worked full time for several years and was supporting himself and voluntarily supporting others. At the hearing, he was able to argue any information he thought relevant to the LFO inquiry. Mr. Lopez did not claim indigency until *after* sentencing when he sought appointment of counsel at public expense to pursue this appeal. Presented with no indication that Mr. Lopez could not pay the LFOs, and plenty of information suggesting he could do so, the trial court had a tenable basis for ordering them.

Mr. Lopez also requests that we waive appellate costs; he has complied with our General Order on that topic. His updated financial form shows that he has several years of full time employment prior to his incarceration for these convictions. Under the circumstances, we deem this matter best presented to our commissioner for consideration under recently amended RAP 14.2 in the event that the State seeks costs as the prevailing party.

---

[7] This case does not present the issue of a court's failure to make an inquiry, the problem at issue in *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015) and its progeny.

No. 34059-7-III
*State v. Lopez*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Pennell, J.

16