[No. 10165–7–III. Division Three. December 13, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. ORVILLE ALLEN LONGUSKIE, *Appellant.*

*Charles E. Alden,* for appellant.

*Dennis J. DeFelice, Prosecuting Attorney,* for respondent.

GREEN, A.C.J.—On May 3, 1989, Orville Allen Longuskie was convicted of one count of first degree kidnapping, RCW 9A.40.020(1)(a), (d); one count of attempted first degree kidnapping, RCW 9A.28.020(1), (3)(b);[1] 9A.40.020(1)(b); and one count of third degree child molestation, RCW 9A.44.089. The court imposed concurrent exceptional sentences of 192 months for count 1, 120 months for count 2 and 24 months for count 3.

Mr. Longuskie appeals, contending the court erred by (1) admitting certain evidence under ER 404(b); (2) denying his motion for a directed verdict; and (3) imposing the exceptional sentence. We affirm.

During the 3 years prior to his criminal conviction, Mr. Longuskie, a bachelor, taught a combination fifth/sixth grade class in Kahlotus, Washington. In 1986–1987, J.D., then 12 and slightly retarded, was a student in his fifth grade class. During the next two school years, the relationship between Mr. Longuskie and J.D. intensified to the point Mr. Longuskie assumed a parental role. The two took trips together to Seattle, Wenatchee, and Westport.

Until the fall of 1988, that relationship was with the permission of J.D.'s father, an alcoholic. By November 1 of that year, the father decided J.D. was spending too much time with Mr. Longuskie. That same month, Mr. Longuskie explored the possibility of an Alternative Residential Placement (ARP) on behalf of J.D. On December 21, J.D.'s father contacted the school and left a message that J.D. was to spend Christmas at home. Although Mr. Longuskie

---

[1]The information incorrectly cited RCW 9A.28.080(1), (3)(b).

admitted he did not have permission to take J.D. to Wenatchee for the holidays, he did so anyway.

On January 3, 1989, an ARP petition was filed in Franklin County Juvenile Court. On January 5, J.D.'s father reported his son as a runaway. Subsequently, a decision was made to place J.D. with his grandmother, who also lived in Kahlotus near the school.

On January 13, Mr. Longuskie took sick leave from school. That same day, J.D.'s grandmother reported J.D. missing. During the next week, Mr. Longuskie and J.D. stayed at three different motels: the Hanford House in Richland on January 13, 14 and 15 (J.B., another 15–year–old boy and former student, was also present); the Starlite Motel in Pasco on January 16, and Cavanaugh's in Kennewick on January 18 and 19. Mr. Longuskie took sick leave on January 17 and 18. On January 19, he taught school and then attended a school board meeting convened to investigate his relationship with J.D. After the meeting, a board member became suspicious when he noticed there was no one staying at the Longuskie residence. On January 20, he called several motels in the Tri–Cities area, found Mr. Longuskie and J.D. registered at Cavanaugh's and notified the sheriff. Meanwhile, Mr. Longuskie had returned to Kahlotus that morning to teach his class. During that time, J.D. was taken into custody by sheriff's deputies. Mr. Longuskie was arrested that evening en route from Kahlotus to Cavanaugh's. He was charged with first degree kidnapping and released on bail on the condition he have no contact with J.D.

During the initial investigation, J.D. denied there had been sexual contact with Mr. Longuskie. He was placed in a foster home in Burbank. Mr. Longuskie discovered his location and despite the no–contact order, hired J.B. for 5 days giving him $50 to contact J.D. and promising him his full paycheck if he succeeded in getting J.D. into his car. During conversations with J.D., Mr. Longuskie attempted to entice him to leave the area. On February 6, Mr. Longuskie was arrested at the Red Lion Motel in Pasco. While

incarcerated, he attempted to hire an undercover detective to kidnap J.D. In March 1989, J.D. admitted sexual contact with Mr. Longuskie, who was then charged by a fourth amended information with the current offenses.

## ER 404(b)

■ Mr. Longuskie contends the court erred in admitting certain testimony under ER 404(b):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In determining whether other crimes or misconduct should be admitted under this rule, a trial court must (1) find the evidence is relevant to prove an issue other than the defendant's character; (2) weigh the prejudicial effect against the probative value; and (3) properly limit the purpose for which the jury may consider the evidence. *State v. Saltarelli*, 98 Wn.2d 358, 655 P.2d 697 (1982); *State v. Watkins*, 53 Wn. App. 264, 270, 766 P.2d 484 (1989). The admission of such evidence is reviewed under the abuse of discretion standard. *State v. Mak*, 105 Wn.2d 692, 702, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986). In doubtful cases, the scale should be tipped in favor of the defendant and the evidence should be excluded. *State v. Bennett*, 36 Wn. App. 176, 180, 672 P.2d 772 (1983).

First and more specifically, Mr. Longuskie contends the court erred by allowing the prosecution to attempt to impeach him with testimony by Detective Brud Cowan. He claims this testimony described the undercover detective's alleged attempts to entrap Mr. Longuskie into committing another abduction of J.D. In addition to entrapment, he claims the conversations were made without *Miranda* warnings and constituted a subsequent and separate uncharged offense.

We have reviewed the testimony of Detective Cowan and find no reference to the claimed jailhouse kidnapping

attempt. The only reference to that subject came during the cross examination of Mr. Longuskie when he admitted he had suggested to "Jeff", the undercover detective, that he abduct J.D., and if J.D. resisted, "Jeff" should twist his arm or do "whatever it takes". This statement was properly admitted under ER 404(b) to disprove Mr. Longuskie's assertion that the motive underlying his relationship with J.D. was innocent. Its relevance substantially outweighed any prejudice. Further, the jury was instructed to limit its consideration of this evidence to motive or intent. There was no error.

Second, Mr. Longuskie contends the testimony by some of his former students was erroneously admitted. He argues the testimony was too remote in time, did not impeach his assertion he was physically incapable of achieving an erection, and was unduly prejudicial. Initially, the court refused to admit the testimony and then allowed it after Mr. Longuskie raised the issue of sexual dysfunction. There was no error.

█ It is true that evidence of prior sexual misconduct is inherently prejudicial. *State v. Bythrow,* 114 Wn.2d 713, 718, 790 P.2d 154 (1990). However, under the exceptions to ER 404(b), evidence of sexual contact with third parties has been admitted.[2] Here, Mr. Longuskie testified his sexual dysfunction and lack of arousal began at age 19, some 30 years prior to trial; thus, testimony regarding his sexual habits of 8 or 9 years earlier was not too remote. *See also State v. Sammons,* 47 Wn. App. 762, 766, 737 P.2d 684 (1987) (sexual misconduct 10 years prior to the offense not too remote).

---

[2] *Morgan v. Foretich,* 846 F.2d 941, 944 (4th Cir. 1988) (relevant to show opportunity and to rebut defenses raised); *State v. Gatalski,* 40 Wn. App. 601, 699 P.2d 804 (relevant to issue of intent), *review denied,* 104 Wn.2d 1019 (1985); *State v. Bowman,* 36 Wn. App. 798, 678 P.2d 1273 (relevant to issue of identity), *review denied,* 101 Wn.2d 1015 (1984); *State v. Bennett, supra* (relevant to prove common plan or scheme); *State v. Bouchard,* 31 Wn. App. 381, 639 P.2d 761 (relevant to rebut injury was result of accident), *review denied,* 97 Wn.2d 1021 (1982); *State v. Woolworth,* 30 Wn. App. 901, 639 P.2d 216 (1981) (motive, absence of mistake or accident).

Mr. Longuskie's claim the testimony did not impeach his assertion that he did not become sexually aroused or was physically incapable of erection is without merit. One witness, then in the seventh grade, stated he slept with Mr. Longuskie in the same bed and inappropriate touching of the boy's genital area occurred including oral contact and masturbation by Mr. Longuskie. The other witness, then in the fifth grade, stated he slept in the same bed with Mr. Longuskie who touched the boy on his buttocks. Thus, the evidence rebutted both assertions. *See State v. Bennett,* 42 Wn. App. 125, 127, 708 P.2d 1232 (1985), *review denied,* 105 Wn.2d 1004 (1986).

## DIRECTED VERDICT

Mr. Longuskie contends the court erred in denying his motion for a directed verdict.

■ Evidence is sufficient to support a criminal conviction if, after viewing the evidence most favorable to the State, any reasonable trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 221–22, 616 P.2d 628 (1980). Deference must be given to the trier of fact who resolves conflicting testimony and evaluates the credibility of witnesses and persuasiveness of material evidence. *State v. Carver,* 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989) (citing *Green* and *State v. Lawson,* 37 Wn. App. 539, 543, 681 P.2d 867 (1984)).

Mr. Longuskie challenges the evidence of child molestation contending the testimony was inconsistent. He points out that J.D. told police on three different occasions there had been no sexual contact. Then, on March 21 while talking with Detective Cowan, J.D. recanted his prior statements and admitted he engaged in "dry humping" with Mr. Longuskie around 1,000 times at the Starlite Motel on various occasions. He denied any oral sex had occurred. Later, he admitted Mr. Longuskie had engaged in oral sex with him at the Starlite on January 19, 1989. It is undisputed Mr. Longuskie and J.D. stayed at Cavanaugh's in Benton

County that night. Other evidence showed Mr. Longuskie and J.D. stayed at the Starlite in Franklin County on January 16. The other 15–year–old, J.B., stated Mr. Longuskie admitted to him his sexual contact with J.D. However, J.B. did not provide any details regarding the time or place of the contact. Thus, there was inconsistency in the testimony regarding the place and time of the sexual contact.

 The inability to recall specific dates is not fatal to the admission of a victim's testimony. As noted in *State v. Ferguson*, 100 Wn.2d 131, 139, 667 P.2d 68 (1983), "[t]o require [the victim] to pinpoint the exact dates of the oft–repeated incidents of sexual contact would be contrary to reason." Here, J.D. spent a week with Mr. Longuskie, staying in various motels at night, occasionally returning to Kahlotus during the day. There is sufficient evidence for a jury to conclude from J.D.'s testimony that sexual contact occurred within the time period of the kidnapping charge. The motion for directed verdict was properly denied.

### EXCEPTIONAL SENTENCE

Third, Mr. Longuskie contends the court erred in imposing an exceptional sentence of 192 months for the kidnapping, 120 months for attempted kidnapping and 24 months for third degree child molestation. The court found Mr. Longuskie's offender score for count 1 was 4, count 2 was 4,[3] and count 3 was 2. Thus, the court found the standard range for count 1 was 72 to 96 months, count 2 was 54 to 72 months, and count 3 was 4 to 12 months.

 Appellate review of an exceptional sentence is governed by RCW 9.94A.210(4) and involves a 3–part inquiry. *State v. Nordby*, 106 Wn.2d 514, 517–18, 723 P.2d 1117 (1986); *State v. Oxborrow*, 106 Wn.2d 525, 529, 723 P.2d 1123 (1986). The reviewing court must first determine if the court's reasons for imposing the sentence are supported by the record. *Nordby*, at 517. These reasons will be upheld if they are not clearly erroneous. *Nordby*, at 517–18. Second,

---

[3]RCW 9.94A.360(10).

the reviewing court must independently determine if the reasons justify the imposition of the sentence. The standard of review is error of law. *Nordby,* at 518. Finally, the reviewing court must determine if the sentence imposed was excessive, under an abuse of discretion standard. *Oxborrow,* at 530. Here, Mr. Longuskie only contends the reasons given do not justify the imposition of an exceptional sentence—the second inquiry.

The court gave four reasons for imposing an exceptional sentence: (1) J.D. was particularly vulnerable, given his limited intellectual ability and his lifestyle in a dysfunctional family; (2) the crimes were part of an ongoing pattern of sexual abuse of the same victim over a prolonged period of time; (3) Mr. Longuskie abused his position of trust as a teacher, quasi member of J.D.'s family and surrogate parent; and (4) Mr. Longuskie was likely to reoffend, having failed to acknowledge any responsibility for his actions, an indication he is not amenable to treatment.[4]

■■ Mr. Longuskie argues most crimes involving sexual contact with children inherently involve an abuse of trust, as studies show these crimes most often occur among family members. However, that argument does not apply to kidnapping. Abuse of trust is an aggravating factor and, as a matter of law, may be the basis for an exceptional sentence. *State v. Shephard,* 53 Wn. App. 194, 199, 766 P.2d 467 (1988); *State v. Harp,* 43 Wn. App. 340, 343, 717 P.2d 282 (1986). Whether abuse of trust is an aggravating circumstance for imposing an exceptional sentence for third degree child molestation need not be addressed. Mr. Longuskie was sentenced to concurrent terms, the longest of

___

[4]While not challenged on appeal, the court's finding Mr. Longuskie was not amenable to treatment was not supported by evidence from a mental health professional. Given this lack of evidence, it cannot be considered an aggravating factor. *See State v. Pryor,* 115 Wn.2d 445, 454–55, 799 P.2d 244 (1990). If on resentencing, sufficient evidence is presented Mr. Longuskie is amenable to treatment, the court may want to consider imposing a sentence which will make him eligible for treatment under RCW 9.94A.120(7)(a).

which was for kidnapping. Thus, any error in this regard was not prejudicial.

■ Though no error has been assigned to the court's computation of the offender scores, we address that issue sua sponte because of error.[5] The court found none of the three crimes encompassed the same course of criminal conduct. This was error. If the multiple crimes encompass the same criminal intent, involve the same victim and occur at the same time and place, the crimes encompass the same course of criminal conduct for purposes of determining an offender score. *State v. Collicott*, 112 Wn.2d 399, 411, 771 P.2d 1137 (1989); *State v. Dunaway*, 109 Wn.2d 207, 217, 743 P.2d 1237, 749 P.2d 160 (1987). The doctrine of "same criminal course of conduct" functions independently of the doctrine of merger. Thus, though the offenses for which Mr. Longuskie was charged and convicted would not merge, *see In re Fletcher*, 113 Wn.2d 42, 776 P.2d 114 (1989), the first degree kidnapping and third degree child molestation do constitute the same course of criminal conduct. Here, child molestation was the objective intent. The kidnapping furthered that criminal objective and the crimes were committed at the same time and place. As noted in *Dunaway*, at 217, it is the underlying felony which enables the State to elevate the kidnapping charge to first degree. Thus, the child molestation and first degree kidnapping should be treated as one crime for determining the offender scores. This conclusion reduces Mr. Longuskie's offender score to 3 for each of the kidnapping convictions and reduces their standard range to 67 to 89 months and 50 to 67 months, respectively. The offender score for third degree child molestation would be 1 and the standard range 3 to 8 months.

---

[5]We note Mr. Longuskie has no prior criminal history. His offender scores are based solely on the current offenses.

In light of these sentencing errors, we affirm the convictions but remand for resentencing, giving consideration to whether Mr. Longuskie is amendable to treatment.

THOMPSON and SHIELDS, JJ., concur.