# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68056-1-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| | ) | UNPUBLISHED OPINION |
| WILLIS ALLEN WHIPPLE, | ) ) | |
| Appellant. | ) ) | FILED: May 6, 2013 |

GROSSE, J. — A developmentally delayed 12-year-old girl's generic testimony of multiple sexual assaults may be sufficient to sustain multiple convictions of a resident child rapist.[1] Willis Whipple argues that the generic testimony here was insufficient to support his convictions of four counts of first degree rape of a child. He also argues that the prosecutor's improper arguments demonstrate the insufficiency of the evidence. Whipple also challenges two conditions of community custody imposed at sentencing. We affirm the conviction but remand for the trial court to strike the challenged community custody conditions.

## FACTS

The State charged Whipple with four counts of first degree rape of a child, S.T., occurring on or about January 1, 2010 to July 31, 2010. At trial in September 2011, S.T. testified that she was 12 years old and in seventh grade but she could not spell her last name, identify her school or town, or remember

---

[1] See State v. Hayes, 81 Wn. App. 425, 438, 914 P.2d 788 (1996).

her birthday.[2] S.T. identified Whipple as her uncle and testified that she stayed in the same house with him when she and her sisters and brother spent weekends with Whipple's "mom and dad."

S.T. testified that the first time "something happened" with Whipple, she was sleeping on a couch in the same room with her brother, her sisters, and her father. Whipple woke her, told her to come to the bedroom, and "said he would give [her] a treat after it." S.T. testified that she went with Whipple to his bed, where she took off her pajama pants and underwear. When asked why she took off her clothes, S.T. responded, "How else am I going to get the chocolate?" S.T. testified that Whipple touched her with his hand on "My penis, my butt, and my boobies."[3] S.T. agreed that her "penis" is between her legs on the front of her body. When asked whether she had another name for her "penis," S.T. said, "No." S.T. testified that after Whipple stopped touching her, he gave her chocolate, and she went back to her bed, ate the chocolate, and went to sleep. S.T. testified that she thought she should not tell other people in the house about how she got the chocolate, "because then I have to share the chocolate."

S.T. testified that the "next time" took place in the bathroom at night. S.T. testified that Whipple woke her up and came into the bathroom with her, she used the toilet, and "[h]e told [her] to wipe." S.T. initially refused to provide additional details or explain her statements. Throughout her testimony, S.T. answered "I don't know," or "I don't remember," to several questions, and

---

[2] S.T.'s mother testified that S.T. is "slow in school," "doesn't catch on to schooling, like spelling, reading, writing," and was diagnosed as "[m]entally retarded" when she was in third grade.

[3] S.T. testified that when he touched her, Whipple's fingers "[s]tayed outside" her body.

eventually admitted, "I just don't want to talk about it right now." In response to a series of general questions, S.T. agreed that "things happened" with Whipple more than once in the bedroom, the laundry room, and the bathroom, but only those three rooms. Ultimately, referring to the first incident in the bathroom, S.T. testified, "He started licking me." The prosecutor asked, "Where did he lick you?" S.T. answered, "In my pee-pee." The following exchange occurred:

> Q: How many times do you think he licked you, how many different days or nights?
> A: A couple.
> Q: What do you mean by "a couple"?
> A: I don't know.
> Q: Is that two, three, or more than three?
> A: More than three.

S.T. later testified that when he was licking her, Whipple was on his knees and she was standing. S.T. did not describe any other incidents or details, despite her testimony that more than ten incidents occurred in each of the three rooms she identified.

S.T.'s mother, Ronda Lee Snowden, testified that S.T. had regular visits every other weekend with her father, Luddly Thompson, at the home of Thompson's mother, Anita Thompson, in Monroe, Washington, between September 2009 and June 2010.

For the defense case, Anita Thompson testified that S.T. usually stayed at her house on alternating weekends during the fall of 2009 until June 2010, when she stayed for approximately three weeks. Thompson testified that Whipple stayed at her house "off and on" between Thanksgiving 2009 and January 2011. When asked how many times she thought Whipple was at her house when S.T.

was staying there between Thanksgiving 2009 and January 2010, Thompson responded, "I'm assuming -- maybe 20 times."

In his closing argument, the prosecutor began by arguing that the jury should assess S.T.'s credibility by focusing on the particular moment in S.T.'s testimony when she responded to his question of why she took off her clothes with "How else am I going to get the chocolate?" The prosecutor argued, "So I ask you, what did you feel in your heart, what did you feel in your stomach, when you heard that answer? At that moment in time, did you have any doubt whatsoever that what she just said was the truth?" He asked the jury to start with that moment in considering whether S.T. was confused or lied during her testimony. He continued, "You can't ignore everything else, because you can't find somebody guilty until you have analyzed all the evidence, or the lack of evidence, and decide beyond a reasonable doubt that it's true and that you are satisfied that all the elements have been proved." The prosecutor argued that the jury should find Whipple guilty of the four charged counts under the third definition of "sexual intercourse" referring to "any contact with the mouth and genitals," based on S.T.'s testimony "with respect to the licking," which S.T. testified occurred "[m]ore than three" times.

Defense counsel argued that even if the jury believed S.T., her testimony regarding the licking only supported one count of child rape because she did not sufficiently distinguish other incidents. Defense counsel further argued that the jury should not believe S.T. because she was suggestible, confused, or not telling the truth, as demonstrated when she claimed during a defense interview that Whipple touched her inappropriately hundreds of times in the laundry room,

4

bedroom, and bathroom, but later testified that nothing happened, or different things happened, or she failed to describe any specific incident. Defense counsel also directed the jurors to the instructions and argued that they were not allowed to rely on what they knew in their hearts as suggested by the prosecutor.

In rebuttal, the prosecutor urged the jury to consider S.T.'s actual testimony rather than defense counsel's characterization of the evidence. He described his efforts to draw S.T. out when she failed to provide details or explanations for her statements indicating that "things happened" with Whipple. He stated, "She made clear there was a lot more that happened, but she didn't describe it, so you don't have that evidence. But don't assume from that that it didn't happen." The prosecutor suggested that the jury should determine whether S.T.'s testimony that nothing happened in the laundry room negated her testimony of other specific events. He argued, "[I]t all started because she told us something happened in three different places, including the laundry room. So you can't just assume that at one point when she says 'nothing,' that that means nothing happened. Sometimes that might be the right conclusion, or sometimes you might not know, which means there's reasonable doubt; or sometimes it means, I don't want to talk about it; nothing happened." Finally, the prosecutor clarified his argument regarding the jury's assessment of S.T.'s credibility:

> This case comes down to [S.T.], and that's why it comes down to
> that moment. And when I said, you know in your heart of hearts, I
> didn't mean to say use sympathy or passion or prejudice to reach a
> verdict in this case, because that's absolutely right; you cannot do
> that. When I said heart of hearts, I just meant the certainty. It's not
> about rendering the verdict, it's about assessing credibility, because
> first you have to assess the credibility before you can render a
> verdict. And you should know beyond all doubt whatsoever, and
> that's all I really meant by heart of hearts. I'm not asking you to

5

convict somebody based on passion or emotion. But you know, and you knew right then, that it was the absolute truth.

The jury found Whipple guilty as charged and the trial court imposed a standard range sentence.

Whipple appeals.

## ANALYSIS

Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found a defendant guilty beyond a reasonable doubt.[4] "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[5] "Credibility determinations are for the trier of fact and are not subject to review."[6] We must defer to the jury on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence.[7]

The State charged Whipple with four counts of first degree rape of a child under RCW 9A.44.073, which provides in pertinent part:

> (1) A person is guilty of rape of a child in the first degree when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim.

RCW 9A.44.010(1) provides:

> "Sexual intercourse" (a) has its ordinary meaning and occurs upon any penetration, however slight, and
>
> (b) Also means any penetration of the vagina or anus however slight, by an object, when committed on one person by another,

---

[4] State v. Tilton, 149 Wn.2d 775, 786, 72 P.3d 735 (2003) (quoting State v. Joy, 121 Wn.2d 333, 338, 851 P.2d 654 (1993)).

[5] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[6] State v. Thomas, 150 Wn.2d 821, 874, 83 P.2d 970 (2004).

[7] Thomas, 150 Wn.2d at 874-75.

whether such persons are of the same or opposite sex, except when such penetration is accomplished for medically recognized treatment or diagnostic purposes, and

(c) Also means any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex.

To convict the defendant of multiple acts, the jury must unanimously agree on the act or incident constituting the crime.[8] "In sexual abuse cases where multiple counts are alleged to have occurred within the same charging period, the State need not elect particular acts associated with each count so long as the evidence 'clearly delineate[s] specific and distinct incidents of sexual abuse' during the charging periods."[9]

After balancing the rights of the accused and the young victims of multiple sexual assaults, this court concluded that "generic" testimony may be sufficient to support a conviction for multiple counts of sexual assault, if it meets certain minimum requirements:

First, the alleged victim must describe the kind of act or acts with sufficient specificity to allow the trier of fact to determine what offense, if any, has been committed. Second, the alleged victim must describe the number of acts committed with sufficient certainty to support each of the counts alleged by the prosecution. Third, the alleged victim must be able to describe the general time period in which the acts occurred.[10]

---

[8] State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984).

[9] State v. Hayes, 81 Wn. App. 425, 431, 914 P.2d 788 (1996) (quoting State v. Newman, 63 Wn. App. 841, 851, 822 P.2d 308, review denied, 119 Wn.2d 1002, 832 P.2d 487 (1992)).

[10] Hayes, 81 Wn. App. at 438.

Whipple first contends that S.T. failed to meet the first requirement because she did not define her "pee-pee" or clarify that she was referring to her genitals and "had no consistent language to describe her genitals."

Whipple fails to identify any authority suggesting that a developmentally delayed 12-year-old girl's reference to her "pee-pee," without more, does not allow a reasonable trier of fact to infer that "pee-pee" is a reference to her "sex organs."[11] And we defer to the trier of fact on issues of conflicting testimony and persuasiveness of the evidence.[12] When viewed in the light most favorable to the State, S.T.'s testimony that Whipple "licked" her "pee-pee" describes an act with sufficient specificity to allow the trier of fact to determine whether Whipple committed rape of a child under RCW 9A.44.010(1)(c) by making oral-genital contact with S.T.[13] S.T.'s description of Whipple waking her up at night, following her into the bathroom, telling her to wipe, and then kneeling to lick her "pee-pee" while she was standing "add[s] to the specificity prong."[14]

Whipple next contends that S.T. failed to describe the number of acts with sufficient certainty to support four counts of child rape. Whipple claims S.T.

---

[11] Whipple cites State v. A.M., 163 Wn. App. 414, 421, 260 P.3d 229 (2011), to support his claim that S.T.'s testimony did not establish penetration of her vagina or anus "as required for sexual intercourse." A.M. is limited to the question of whether penetration of the buttocks, but not the anus, constitutes "sexual intercourse" under RCW 9A.44.010(1)(a), and is therefore irrelevant to the question presented here of whether "pee-pee" sufficiently identifies "sex organs" under RCW 9A.44.010(1)(c).

[12] State v. Longuskie, 59 Wn. App. 838, 844, 801 P.2d 1004 (1990).

[13] See Hayes, 81 Wn. App. at 438 (victim's testimony that defendant "put his private part in mine" established required specificity of description of the acts).

[14] Hayes, 81 Wn. App. at 438 (victim's testimony that defendant "put his private part in mine" "establishes the first prong of the requirement, specificity of description of the acts. Her descriptions of how he did these acts add to the specificity prong.").

testified that each interaction with Whipple was different but she failed to describe where on her body she was licked on any other occasion. Whipple points to S.T.'s testimony when the following exchange occurred:

> Q: Was it always the same, like, the licking, or did different things happen in the bathroom?
> A: Different things.
> Q: Can you tell us a little bit about some of the other things that are different?
> A: (Pause.) I don't want to talk about it.

But S.T. did not testify to any innocuous incidents of licking such that the jury would be unable to tell which occasions involved acts constituting a particular offense.[15] And viewed in the light most favorable to the State, S.T.'s statement that "different things" happened in the bathroom suggests that *other additional* things that she did not want to describe occurred in the bathroom but does not contradict her testimony that Whipple "licked" her "in [her] pee-pee" on "[m]ore than three" "different days or nights." This evidence describes a number of acts committed with sufficient certainty to support the four counts alleged.[16]

Whipple also contends that S.T. did not sufficiently describe the time period in which the acts occurred, the third prong required to support a conviction with generic testimony. He claims that S.T. did not indicate that any incident occurred in the time frame of the charging document and the jury instruction.

---

[15] Cf. State v. Jensen, 125 Wn. App. 319, 324, 104 P.3d 717 (2005) (reversing one of three child molestation convictions where victim described two incidents with particularity, testified defendant came into her room at night on two other occasions, and detective testified victim reported a "few" incidents of touching, because victim did not describe acts with sufficient specificity for jury to determine which offenses, if any, defendant committed on the two additional occasions he came into her room at night).

[16] Hayes, 81 Wn. App. at 439 (victim's testimony that defendant had intercourse with her "at least 'four times' and up to 'two or three times a week'" supported conviction on four counts).

But S.T. testified that the incidents occurred when she was staying at Thompson's house for weekends and Whipple lived there. Independent evidence linked the general time period she stayed with Thompson to the specific dates in the information and the jury instructions by establishing that S.T. spent weekends at Thompson's house between September 2009 and June 2010 and that Whipple occasionally stayed there between Thanksgiving 2009 and January 2011. Whipple fails to identify any authority suggesting that S.T.'s testimony here is insufficient to identify a *general* time period. "[S]pecifics regarding date, time, place, and circumstances are factors regarding credibility and are not necessary elements that need to be proved to sustain a conviction."[17] Viewed in the light most favorable to the State, S.T.'s testimony connecting the incidents to times she spent weekends at Thompson's house and independent evidence establishing the timeframe of S.T.'s visits would allow the jury to determine whether the alleged acts occurred within the charging period.

Whipple did not object to the prosecutor's argument at trial and does not argue here that the prosecutor's remarks were so flagrant and ill-intentioned that no curative instruction could have alleviated the prejudice. Instead, he argues generally that the prosecutor urged the jury to convict based on feelings, misled the jury regarding the burden of proof, and encouraged the jury to convict based on speculation. Whipple claims that the prosecutor's argument demonstrates the insufficiency of the evidence.

---

[17] Hayes, 81 Wn. App. at 437 (citing People v. Jones, 51 Cal.3d 294, 792 P.2d 643, 270 Cal. Rptr. 611, 623 (1990)).

In particular, Whipple claims that the prosecutor urged the jury to convict based on what they felt in their hearts. A review of the argument reveals that the prosecutor actually mentioned hearts and feelings when discussing S.T.'s credibility and specifically explained during rebuttal that when he referred to hearts and feelings he was talking about the certainty of their belief in S.T.'s credibility. This is not improper. Prosecutors are given reasonable latitude to draw and express inferences from the evidence, as well as the demeanor of witnesses, as to the credibility of witnesses.[18]

Whipple also claims that the prosecutor told the jury not to assume that nothing happened when S.T. said that nothing happened. But a review of the entire argument in context reveals that the prosecutor was responding to defense counsel's suggestion that the jury should not credit S.T. because she contradicted herself and repeatedly claimed that nothing happened. The prosecutor argued that the jury should recall the actual series of questions and answers during S.T.'s testimony, and should not assume that S.T.'s refusal to answer certain questions or her testimony that "nothing" happened in response to one question necessarily contradicted her testimony in response to other questions. Although the prosecutor's argument may have been inartful at points, it was a fair response to defense counsel's argument.[19]

Finally, Whipple argues that the prosecutor improperly "put the onus on the jury to find four separate occurrences rather than acknowledging its burden to prove four separate acts." He identifies the prosecutor's argument that the jury

---

[18] State v. Knapp, 14 Wn. App. 101, 111, 540 P.2d 898 (1975).
[19] State v. Russell, 125 Wn.2d 24, 87, 882 P.2d 747 (1994).

could pick any four times they believe the acts occurred as long as they agree on each act that occurred. But the prosecutor referred specifically to S.T.'s testimony that the licking occurred "[m]ore than three" times and the fact that the State charged Whipple with four counts. The prosecutor accurately argued that the jury could determine from the evidence that more than four acts occurred, but that it must unanimously agree as to which acts were proved to support the four counts. The prosecutor's argument was consistent with the court's instruction to the jury that they must be unanimous as to which act constitutes the count charged and that they must find "an act separate and distinct" for each of the identically charged counts.[20] The argument was not improper.

Finally, Whipple challenges the following community custody conditions imposed at sentencing:

> 7. Do not possess or access sexually explicit materials, as directed by the supervising Community Corrections Officer. Do not frequent establishments whose primary business pertains to sexually explicit or erotic material.
> 8. Do not possess or control sexual stimulus material for your particular deviancy as defined by the supervising Community Corrections Officer and therapist except as provided for therapeutic purposes.

Whipple argues that the conditions are unconstitutionally vague under State v. Bahl.[21] Whipple also argues that the court exceeded its authority when it

---

[20] See Hayes, 81 Wn. App. at 431 ("The trial court must also instruct the jury that they must be unanimous as to which act constitutes the count charged and that they are to find 'separate and distinct acts' for each count when the counts are identically charged.") (quoting State v. Noltie, 116 Wn.2d 831, 842-43, 809 P.2d 190 (1991)).
[21] 164 Wn.2d 739, 193 P.3d 678 (2010).

imposed the conditions because the court did not find that the provisions are crime-related.

The State concedes that condition 8 is improper under Bahl.[22] However, the State argues that condition 7 is not unconstitutionally vague and is related to the crime because "[t]he circumstances of his crimes show Whipple to be egregiously unable to control himself when in a state of sexual stimulus."

The sentencing court has discretion to impose crime-related prohibitions as a condition of supervision.[23] But nothing in the record indicates that Whipple's offenses involved sexually explicit materials or establishments whose primary business involves sexually explicit materials. Under these circumstances, the challenged community custody conditions should be stricken.[24]

We affirm Whipple's conviction, but remand for the trial court to strike the challenged community custody conditions.

WE CONCUR:

---

[22] Bahl, 164 Wn.2d at 761 (identical language unconstitutionally vague where no deviancy had been diagnosed or identified).
[23] RCW 9.94A.703(3)(f).
[24] See State v. O'Cain, 144 Wn. App. 772, 184 P.3d 1262 (2008) (bar on Internet access in rape case improper where not crime related).