# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49654-2-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| DEMETRIUS D. WARLICK, | |
| Appellant. | |

BJORGEN, J. — Demetrius Warlick appeals from his convictions and resulting sentence for felony stalking, two counts of felony violation of a no contact court order, and third degree malicious mischief. Warlick contends that (1) his convictions for felony stalking and two counts of violation of a no contact order violate the constitutional prohibition against double jeopardy and (2) the sentences imposed for his violation of a no contact order convictions exceed the statutory maximum for the offenses. The State concedes that the sentences exceed the statutory maximum.

In his statement of additional grounds for review (SAG), Warlick asserts that (1) the trial court erred by allowing the State to argue an uncharged alternative means for committing violation of a no contact order, (2) the State's charging document was insufficient with regard to one count of Warlick's violation of a no contact order charges, (3) the trial court erred by admitting evidence of a text message in violation of ER 901's authenticity requirement and in

violation of ER 403, (4) the State failed to present sufficient evidence in support of his felony stalking conviction, (5) his defense counsel was ineffective for failing to request a violation of a no contact order jury instruction as a lesser offense to his felony stalking charge, and (6) the sentencing court abused its discretion by failing to consider his request for an exceptional downward sentence.

We affirm with one exception. We accept the State's concession that the terms of incarceration imposed for Warlick's convictions of two counts of felony violation of a domestic violence court order, when combined with his term of community custody, exceed the statutory maximum sentences for the offenses. Accordingly, we remand to the trial court to reduce the terms of community custody associated with Warlick's convictions of violation of a no contact order so that the combined terms of incarceration and community custody do not exceed the statutory maximum.

FACTS

Warlick and Sherry Rilea married in March 2010 and separated in 2014. After the couple separated, Rilea moved to a home in Spanaway with her friend April Calvert.

In 2016, a no contact order was in place that prohibited Warlick from contacting Rilea. Specifically, the no contact order directed Warlick to have "no contact, directly or indirectly, in person, in writing, by telephone, or electronically, either personally or through any person, with [Rilea]." Clerk's Papers (CP) at 44. The no contact order also prohibited Warlick "from entering or knowingly coming within 1,000 feet of [Rilea's] home, school, or place of employment." CP at 44.

On the evening of February 22, 2016, Rilea was at home with Calvert and Calvert's teenage son when they heard someone knocking loudly on the door. Calvert's son went upstairs

to look out a window to see who was knocking on the door. He saw an older male at the door that he did not recognize. He then heard the male tell someone who was hiding in a bush, "[h]ey, man, there's no one there." Report of Proceedings (RP) at 221. Calvert's son then heard the person in the bush tell the male to try knocking on the door again. He believed that the voice of the person in the bush sounded familiar to Warlick's voice.

Calvert's son eventually saw the man in the bush leave and enter a white Cadillac, the same type of vehicle that Warlick drives. He thought that the man in the bush looked a lot like Warlick. According to Calvert, Rilea appeared "upset" and "scared" upon hearing about what Calvert's son had observed from the upstairs window. RP at 281. Rilea called the police and Pierce County Sheriff's Deputy Curt Seevers responded to the call. Seevers noted in his report that Rilea appeared to be "fearful" and "afraid." RP at 420.

On April 22, Rilea received several phone calls and texts from Warlick. That afternoon, Rilea was at home when Warlick called or texted to tell her that he would be at the house in three minutes. Shortly thereafter, Rilea looked out an upstairs window and saw Warlick drive up in his white Cadillac, exit the vehicle, and grab a crowbar or tire iron from underneath the passenger seat. Rilea opened the window and yelled, "Demetrius, don't do it." RP at 323. Warlick then looked at Rilea and smashed the back driver's side window of her car. Rilea called the police and Pierce County Sheriff's Deputy Ashton Cannon responded to the call. Cannon noted in his report that Rilea appeared "fearful" and "nervous." RP at 544.

On April 25, Rilea and Calvert were watching a movie in their home when Calvert looked out a window and saw what appeared to be Warlick's white Cadillac. Calvert went upstairs, looked out a window, and saw Warlick smashing the passenger side windows of Rilea's car with a crowbar or tire iron. Calvert yelled for Rilea to call the police and, when she returned

to the window, she saw that Warlick had left. Pierce County Sheriff's Deputy Kurt Kemp responded to the call. When Kemp arrived he saw that both Rilea and Calvert appeared to be nervous and scared. Kemp noted in his report that Rilea was "crying, fearful, hysterical, and nervous." RP at 507.

After Warlick's arrest, Rilea received several phone calls from the Pierce County Jail where Warlick was then being detained. Rilea did not accept the phone calls. During the time period that Rilea received calls from the Pierce County Jail, she did not know any person apart from Warlick who was being housed at the jail. Rilea stated that the repeated phone calls from the Pierce County Jail caused her to fear for her safety.

The State charged Warlick by amended information with felony stalking, three counts of felony violation of a no contact order, and two counts of third degree malicious mischief. The matter proceeded to a jury trial at which witnesses testified consistently with the facts stated above. Additionally, at trial, Torvald Pearson, a corrections deputy at the Pierce County Jail, testified that a call data report showed that multiple phone calls were made to Rilea's phone number using a personal identification number assigned to Warlick. The call data report was admitted as a trial exhibit.

Warlick stipulated to the following at trial:

> That on or about the 23rd day of February, 2016, the 22nd day of April, 2016, and the 25th day of April, 2016, there existed a no contact order applicable to the Defendant. The Defendant knew of the existence of this order. The order contains the provision that the Defendant shall have no contact, directly or indirectly, in person, in writing, by telephone, or electronically, either personally or through any person, with Sherry Marie Rilea (date of birth 11/30/1971) and that the Defendant is prohibited from entering or knowingly coming within 1,000 feet of Sherry Marie Rilea's home, school, or place of employment.
>
> . . . .

4

That the defendant, Demetrius Darnell Warlick, has twice been previously convicted for violating the provisions of a court order.

. . . .

That the defendant, Demetrius Darnell Warlick, has been previously convicted of . . . Harassment against Sherry Marie Rilea.

CP at 44-46.

The jury returned verdicts finding Warlick guilty of felony stalking, two counts of violation of a no contact order (based on the April 22 and April 25 incidents), and one count of third degree malicious mischief (based on the April 25 incident). The jury returned a verdict finding Warlick not guilty of one count of violation of a no contact order (based on the February 22 allegation) and left the verdict form blank for the remaining count of third degree malicious mischief (based on the April 22 allegation). The jury also returned special verdicts finding that Warlick and Rilea were members of the same family or household when he committed his offenses.

At sentencing, the trial court imposed a 96 month term of incarceration and 12 months of community custody for Warlick's felony stalking conviction. The trial court also imposed 60 months of incarceration and 12 months of community custody for each of Warlick's convictions of violation of a no contact order, to run concurrently with the sentence imposed for felony stalking. Additionally, the trial court imposed a concurrent 364-day term of incarceration for Warlick's conviction of third degree malicious mischief. Warlick appeals.

ANALYSIS

I. MERGER/DOUBLE JEOPARDY

Warlick first contends that his convictions for felony stalking and two counts of violation of a no contact order violate the constitutional prohibition against double jeopardy because his

5

violation of a no contact order convictions should have merged with his felony stalking

conviction.[1] We disagree.

Whether the merger doctrine bars double punishment is a question of law, which we

review de novo. *State v. Freeman*, 153 Wn.2d 765, 770, 108 P.3d 753 (2005). The double

jeopardy clauses of the United States Constitution and Washington Constitution prohibit multiple

punishments for the same offense. U.S. CONST. amend. V; WASH. CONST. art. I, § 9; *State v.*

*Parmelee*, 108 Wn. App. 702, 708, 32 P.3d 1029 (2001). "Courts use the merger doctrine as a

tool of statutory construction to determine [whether] the legislature intend[ed] multiple

punishments to apply to particular offenses." *State v. Saunders*, 120 Wn. App. 800, 820, 86 P.3d

232 (2004).

Under the merger doctrine, when the degree of one offense is raised by conduct that the

legislature has separately criminalized, we presume that the legislature intended to punish both

offenses only once through the greater sentence applicable to the greater crime. *Freeman*, 153

Wn.2d at 772-73. Two offenses merge under the merger doctrine when

> "to prove a particular degree of crime (*e.g.*, first degree rape) the State must prove
> not only that a defendant committed that crime (*e.g.*, rape) but that the crime was
> accompanied by an act which is defined as a crime elsewhere in the criminal
> statutes (*e.g.*, assault or kidnapping)."

*Freeman*, 153 Wn.2d at 777-78 (quoting *State v. Vladovic*, 99 Wn.2d 413, 420-21, 662 P.2d 853

(1983)). In other words, where a predicate offense is an underlying element of another crime,

---

[1] It is unclear from Warlick's briefing whether he is asserting a double jeopardy violation under
the *Blockburger* "same act or transaction" test. *Blockburger v. United States*, 284 U.S. 299, 304,
52 S. Ct. 180, 76 L. Ed. 306 (1932). Although Warlick's brief recites the *Blockburger* test, it
does not provide any argument as to how the test applies to his multiple convictions. In the
absence of argument on this point, we analyze Warlick's double jeopardy challenge under the
more directly applicable merger doctrine.

generally the predicate offense will merge into the second more serious crime, and the court may not punish it separately. *Saunders*, 120 Wn. App. at 821.

Warlick relies on *Parmelee* to support his claim that his convictions of felony stalking and two counts of violation of a no contact order violated the constitutional prohibition against double jeopardy. *Parmelee*, however, held that certain convictions for the defendant's violation of a court order merged with his felony stalking conviction. In so holding, the *Parmalee* court noted that the defendant was convicted of stalking under a subsection of the statute that elevated the crime to a felony where "'the stalking violates any protective order protecting the person being stalked.'" 108 Wn. App. at 709-10 (quoting former RCW 9A.46.110(5)(b) (1999)).[2] Here, in contrast, the State did not rely on the violation of a protective order to elevate Warlick's stalking charge to a felony under RCW 9A.46.110(5)(b)(ii). Rather, in elevating Warlick's stalking charge to a felony, the State alleged that he had previously been convicted of harassment of the same victim, an independent ground allowing elevation to felony stalking under RCW 9A.46.110(5)(b)(i). Warlick stipulated at trial to a previous conviction of harassment against Rilea. Therefore, unlike in *Parmelee*, the State was not required to prove that Warlick violated a protective order to elevate his stalking charge to a felony.

The State did not rely on the facts underlying Warlick's convictions for violating a no contact order to elevate his stalking charge to a felony. Therefore, Warlick's convictions for violation of a no contact order do not merge with his felony stalking conviction.

## II. SENTENCING ERROR

Next, Warlick contends that the trial court erred by imposing 60-month incarceration terms plus 12 months of community custody for his convictions on two counts of violation of a

---

[2] This provision was recodified in the current version of the statute at RCW 9A.56.110(5)(b)(ii).

no contact order. The sentence, Warlick contends, exceeds the statutory maximum for the offenses. The State concedes error, and we accept the State's concession.

A trial court errs when it imposes a term of incarceration and community custody that when combined exceeds the statutory maximum for the offense. *State v. Boyd*, 174 Wn.2d 470, 472-73, 275 P.3d 321 (2012). "[T]he trial court, not the Department of Corrections, [is] required to reduce [the defendant]'s term of community custody to avoid a sentence in excess of the statutory maximum." *Boyd*, 174 Wn.2d at 473. The statutory maximum sentence for felony violation of a no contact order, a class C felony, is 60 months. Former RCW 26.50.110(5) (2015); RCW 9A.20.021(1)(c). Accordingly, we accept the State's concession that the trial court erred by imposing 60-month terms of incarceration plus 12 months of community custody on Warlick's convictions of violation of a no contact order. We remand to the trial court to reduce the terms of community custody associated with those convictions so that the combined terms of incarceration and community custody do not exceed the 60-month statutory maximum sentence.

### III. SAG

A.    Uncharged Alternative Means

In his SAG, Warlick first contends that the trial court erred by allowing the State to argue that he committed the April 22 count of violation of a no contact order by either (1) going to Rilea's home and breaking her car window or (2) sending her text messages that same day. Warlick argues that it was error to instruct the jury that it could find him guilty of violation of a no contact order by sending Rilea text messages because contacting her by text was an uncharged alternative means for committing the offense. Warlick is incorrect.

The State is required to inform an accused of the criminal charges to be met at trial, and the State cannot try an accused for an uncharged crime. *State v. Lindsey*, 177 Wn. App. 233,

246-47, 311 P.3d 61 (2013). "An alternative means crime is one where the legislature has provided that the State may prove the proscribed criminal conduct in a variety of ways." *State v. Armstrong*, 188 Wn.2d 333, 340, 394 P.3d 373 (2017). When the State charges an accused with committing one of multiple alternative means to a single crime, the trial court errs by instructing the jury that it may consider any uncharged means by which the accused could have committed that crime. *State v. Bray*, 52 Wn. App. 30, 34, 756 P.2d 1332 (1988). Instructing the jury on an uncharged alternative means violates the defendant's right to be informed of the charges against him or her. *State v. Laramie*, 141 Wn. App. 332, 343, 169 P.3d 859 (2007).

Warlick is correct that the State's charging document alleged only a single means for committing violation of a court order; namely, that on or about April 22, 2016, he committed the offense by knowingly having contact with Rilea when such contact was prohibited by court order, with knowledge of the existence of the court order, and that the violation of a court order was a felony based on Warlick's two previous convictions for violating court orders. Warlick is incorrect, however, that the State sought to present evidence supporting an alternative uncharged means for committing the offense. Rather, the State presented evidence that Warlick engaged in two different acts that would each independently support the same means for committing the April 22 violation of a no contact order. In other words, the State's allegations that on April 22 Warlick sent text messages to the protected party *and* went to the protected party's home presented two "separate and distinct" offenses of violation of the no contact order as opposed to a single offense "commit[ed] in more than one way." *State v. Arndt*, 87 Wn.2d 374, 377, 553 P.2d 1328 (1976). Because the State proceeded on a "multiple acts" theory, as opposed to an "alternative means" theory to support the charge of violation of a no contact order stemming

from the April 22 incidents, Warlick's contention fails. *State v. Bobenhouse*, 166 Wn.2d 881, 892, 214 P.3d 907 (2009).[3]

B.        Sufficiency of Charging Document

Next, Warlick appears to contend that the State's charging document was insufficient with regard to the violation of a no contact order charge alleged to have occurred on or about April 22. We disagree.

A charging document must allege essential statutory and non-statutory elements of a crime, providing the defendant with sufficient notice of "'the nature and cause of the accusation against him.'" *State v. Zillyette*, 178 Wn.2d 153, 158, 307 P.3d 712 (2013) (quoting *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991)); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. To satisfy this requirement, the information must allege (1) "every element of the charged offense" and (2) "particular facts supporting them." *State v. Nonog*, 169 Wn.2d 220, 226, 237 P.3d 250 (2010). However, a charging document is not required to allege specific facts beyond these. *Laramie*, 141 Wn. App. at 338. A failure to allege specific facts "may render the charging document vague, but it is not constitutionally defective." *Laramie*, 141 Wn. App. at 340. A vague charging document "may be corrected under a bill of particulars." *State v. Leach*, 113 Wn.2d 679, 687, 782 P.2d 552 (1989). Where a defendant fails to request a bill of particulars at trial, he waives any challenge to the charging instrument for vagueness. *State v. Mason*, 170 Wn. App. 375, 385, 285 P.3d 154 (2012).

Warlick challenges the sufficiency of the State's charging document only in relation to the events of April 22. To the extent Warlick claims that the information failed to state the

---

[3] We note that the trial court provided the unanimity instruction required when the State alleges multiple acts supporting the same charged offense. *Bobenhouse*, 166 Wn.2d at 892.

essential elements of the offense of violation of a no contact order, that claim fails. Count II of the amended information plainly sets out the elements.

To the extent Warlick claims that the information is constitutionally deficient because it failed to include the allegation that he had sent text messages to Rilea on April 22 as a basis for the charge of violating a no contact order, his claim also fails. The inclusion of the date and the allegation that Warlick knowingly had contact with Rilea on that date is sufficient to factually support the element. If Warlick is asserting that the allegations were vague, the record does not show that he requested a bill of particulars. Therefore, that challenge is waived.

C.      Admission of Text Message

Next, Warlick argues that the trial court erred by admitting evidence of text messages purportedly sent by him to Rilea's phone. Specifically, Warlick argues that the trial court abused its discretion in admitting the evidence because (1) the State failed to authenticate the text messages under ER 901 and (2) the evidence should have been excluded under ER 403 due to its probative value being substantially outweighed by the danger of unfair prejudice. Because Warlick has not designated the text messages trial exhibit for the record on appeal and because the record before us does not otherwise disclose the contents of the text message at issue, the record is insufficient for us to review his authentication claim. Additionally, Warlick has waived any contention with the admission of the evidence under ER 403 by failing to object on that basis at trial.

## 1. ER 901

We review a trial court's decision to admit evidence for a manifest abuse of discretion. *State v. Barry*, 184 Wn. App. 790, 801-02, 339 P.3d 200 (2014). A trial court abuses its discretion when its decision is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons. *Barry*, 184 Wn. App. at 802.

In *State v. Young*, 192 Wn. App. 850, 855-56, 369 P.3d 205, *review denied*, 185 Wn.2d 1042 (2016), we held that the method for authenticating e-mails applies to text messages. Under ER 901(b)(10), e-mails may be authenticated by:

> Testimony by a person with knowledge that (i) the e-mail purports to be authored or created by the particular sender or the sender's agent; (ii) the e-mail purports to be sent from an e-mail address associated with the particular sender or the sender's agent; and (iii) the appearance, contents, substance, internal patterns, or other distinctive characteristics of the e-mail, taken in conjunction with the circumstances, are sufficient to support a finding that the e-mail in question is what the proponent claims.

In *Young*, we held that the recipient's personal knowledge of the sender's phone number *and* the contents of the texts was sufficient evidence to permit a reasonable trier of fact to find that the defendant was the sender of the text messages. 192 Wn. App. at 857. The recipient of the text messages in *Young* had personal knowledge of the defendant's phone number because it was listed as a contact on her phone, and the content of the text messages corroborated the recipient's testimony describing the defendant's conduct. 192 Wn. App. at 857.

Here, as in *Young*, Rilea testified that she knew that the text message at issue came from Warlick because she had personal knowledge of his phone number and listed him as "Darnell," Warlick's middle name, on her phone. RP at 334-36. However, the record before us is insufficient to review the contents or substance of the text message because Warlick has not designated the text message trial exhibit for the record on appeal and because the specific

contents of the text message were not described elsewhere in the record before us. Because a determination of whether the trial court properly admitted the text message exhibit under ER 901 requires examination of matters outside the record designated on appeal, "a personal restraint petition is the appropriate vehicle for bringing th[e] matter[] before the court." *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995). Accordingly, we do not further address the issue.

   2.  ER 403

"A party may assign evidentiary error on appeal only on a specific ground made at trial." *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). Here, Warlick argued against the admission of the text message exhibit only on the ground of lack of authenticity under ER 901, and he did not raise any issue concerning the prejudicial nature of the evidence under ER 403. Because Warlick raises his contention with admission of the text message under ER 403 for the first time on appeal, and because he does not claim that RAP 2.5 applies to allow him to raise this claim for the first time on appeal, we do not address it further.

D.     Sufficiency of the Evidence

Next, Warlick contends that the State failed to present sufficient evidence in support of his felony stalking conviction. Specifically, Warlick argues that the State failed to present any evidence to support the element that "[t]he person being harassed or followed is placed in fear that the stalker intends to injure the person, . . . or property of the person." RCW 9A.46.110(1)(b); CP at 89. We disagree.

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Jensen*, 125 Wn. App. 319, 325, 104 P.3d 717 (2005). In a challenge

to the sufficiency of the evidence, the defendant admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *Jensen*, 125 Wn. App. at 325. Circumstantial evidence and direct evidence are equally reliable. *Jensen*, 125 Wn. App. at 325-26. Credibility determinations are for the trier of fact and are not subject to review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Longuskie*, 59 Wn. App. 838, 844, 801 P.2d 1004 (1990).

Warlick challenges the sufficiency of evidence only as to whether Rilea was reasonably placed in fear that he would injure her or her property. RCW 9A.46.110(1)(b). Warlick's sufficiency challenge lacks merit as Rilea testified that his repeated phone calls to her from jail caused her to fear for her safety. Additionally, a jury could infer that the repeated calls from jail caused Rilea to reasonably fear that Warlick would injure her or her property based on evidence that he twice went to her home to break her car windows and based on testimony regarding Rilea's emotional response to those two incidents. Accordingly, we hold that Warlick's sufficiency claim fails.

E.       Ineffective Assistance of Counsel

Next, Warlick contends that his defense counsel was ineffective for failing to request a violation of a court order jury instruction as a lesser included offense to felony stalking. We disagree.

To prevail on his ineffective assistance of counsel claim, Warlick must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced him. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). To demonstrate deficient performance, Warlick must show that, based on the record, there are no legitimate strategic or

14

tactical reasons for counsel's challenged conduct. *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012). Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of counsel. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). The law affords trial counsel wide latitude in the choice of tactics. *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 736, 16 P.3d 1 (2001).

There is a strong presumption that defense counsel's performance was reasonable. *Grier*, 171 Wn.2d at 33. To rebut this presumption, a defendant must demonstrate that there is no conceivable legitimate tactic explaining defense counsel's performance. *Grier*, 171 Wn.2d at 33.

In *Grier*, our Supreme Court held that an all-or-nothing strategy in foregoing a request for a lesser included jury instruction may be a legitimate trial tactic that does not constitute ineffective assistance of counsel. 171 Wn.2d at 42. Assuming that Warlick would have been entitled to a requested lesser included jury instruction, he nonetheless fails to show that foregoing a lesser included instruction request as part of an all-or-nothing strategy was not a reasonable exercise of trial tactics.

The theme of defense counsel's closing argument was that Rilea could not have reasonably feared injury to herself or her property based on Warlick's multiple jail phone calls because she did not accept the phone calls and speak to Warlick. Absent a lesser included violation of a court order instruction, the jury would be required to acquit Warlick if it found that Rilea did not reasonably fear injury to herself or property based on the phone calls from jail. Accordingly, Warlick has not overcome the strong presumption that defense counsel's decision to pursue an all-or-nothing strategy was tactical and, thus, his ineffective assistance of counsel claim fails.

F.     Consideration of Exceptional Sentence Request

Finally, Warlick contends that the trial court erred by failing to exercise its discretion to consider his request for an exceptional downward sentence. We disagree.

In general, a party cannot appeal a sentence within the standard range. *State v. Brown*, 145 Wn. App. 62, 77, 184 P.3d 1284 (2008); *see also* RCW 9.94A.585(1). The rationale for this rule is that a trial court that imposes a sentence within the range set by the legislature cannot abuse its discretion as to the length of the sentence as a matter of law. *Brown*, 145 Wn. App. at 78.

However, a defendant may appeal when a trial court has refused to exercise its discretion or relies on an impermissible basis for its refusal to impose an exceptional sentence downward. *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017). It is error for a trial court to categorically refuse to impose an exceptional sentence downward or to mistakenly believe that it does not have such discretion. *McFarland*, 189 Wn.2d at 56. Therefore, remand is the appropriate remedy when a trial court imposes a sentence without properly considering an authorized mitigated sentence. *McFarland*, 189 Wn.2d at 58-59.

Warlick requested an exceptional downward 48-month sentence for his felony stalking conviction based on the mitigating factor that Rilea was a willing participant in the incident because she had exchanged text messages and otherwise willingly communicated with him in the past. RCW 9.94A.535(1)(a). In imposing a sentence at the top of Warlick's standard range for felony stalking, 96 months, the trial court noted Warlick's extensive criminal history, which included several domestic violence related convictions. The trial court also rejected defense counsel's argument that Warlick exhibited his desire to move past his relationship with Rilea by filing for divorce, noting that Warlick's charges occurred after he had already filed for divorce.

16

There is nothing in the record suggesting that the trial court categorically refused to consider an exceptional downward sentence or that it erroneously believed it lacked discretion to impose such exceptional downward sentence. To the contrary, the record merely shows that the trial court acted within its discretion in denying Warlick's request for an exceptional downward sentence and imposing a sentence within the standard range. Accordingly, we affirm the trial court's imposition of sentence for Warlick's felony stalking conviction.

We affirm Warlick's convictions and affirm his sentence for felony stalking. We remand for resentencing to reduce the terms of community custody for Warlick's violation of a no contact order convictions such that the combined terms of incarceration and community custody do not exceed the statutory maximum.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, J.

We concur:

Maxa, C.J.

Lee, J.

17